Daniels, J.
The plaintiff’s cause of action, as it was set out in his complaint, and the evidence tended to-sustain it, was for damages which he had sustained becauseóf his wrongful expulsion from membership in the Musical Mutual Protective Union. This union is a corporation created under the laws of the State of New York, and at the time of the plaintiff’s expulsion consisted of upwards of" two thousand members. It was an association of persons engaged directly or indirectly in musical pursuits; and according to-section 1, art. 3, of its constitution and bylaws, it was made the duty of every member of the association to refuse to perform in any orchestra or band in which any person or persons were engaged who were not members in good standing, except organists and directors of musical societies, and members of traveling companies, and then for no longer period than four weeks. Any member-violating this section was declared to be deemed to have committed a breach of good faith and fair dealing between himself and the members of the society, and to be liable to-punishment according to section 2, art. 2, of the by-laws- and constitution ; and by that section, if the person should be found guilty, he is to be fined for the first offense, $10 for the second, $20; and for the third, to be expelled by the board of directors, whose decision it was declared should be final. The members were also made liable to be expelled *254 ’by the board of directors for disobedience of their orders, or non-payment of fines imposed by them. But it was further declared that no expulsion should take place except on charges preferred, a copy of which should be served upon the member charged, who should have a reasonable opportunity for his defense. The plaintiff was charged with a violation of an order made by the board of directors, and notice was given to him to appear before the board and show cause why he should not be • expelled from his membership for his disobedience of the order of- the board •of directors ; but no charges were served upon him. He did appear at the time mentioned in the notice, and the •charges were then read to him ; but he denied the authority of the board of directors in the proceeding and declared his intention to be, not to obey any of its orders. The board of directors proceeded with the case and expelled the plaintiff from the association. This was done in March 1886. The plaintiff afterwards applied to this court by process of mandamus for his restoration, and upon the trial of the action it was concluded that he had been •expelled without authority, and unlawfully, and he was re-instated by the judgment recovered in that action in April, 1887. And it was after his restoration to membership in this manner that this action was brought to recover •damages alleged to have been sustained by him because of his unlawful expulsion. Its trial resulted in a verdict in Ms favor for the sum of $500, and this appeal from the judgment entered upon the verdict, and the order denying a motion for a new trial, has been placed upon numerous exceptions taken to the admission of evidence upon the trial, and to the charge given by the court to the jury.
The judgment in the mandamus proceeding was offered as evidence, and the defendant objected to its admissibility as incompetent, irrelevant, immaterial, and not binding upon the defendant in the case. This was overruled, and the judgment was received in evidence, and to the decision allowing it to be received, the defendant’s counsel *255 excepted. But .this exception is without merit, for the litigation in the proceeding by mandamus' was wholly between the plaintiff as the relator, and the defendant, and the effect of it was the adjudication of the court that he had been unlawfully expelled from this association. That was the point which formed the substantial controversy in that litigation. It was plainly within the issue, and the judgment deciding it, as long as it has not been reversed or set- aside, was decisive and controlling over the parties (Parkhurst v. Berdell, 110 N. Y. 386). In that case the litigation was between- defendants in the action, and it was held to be as binding and conclusive upon them as it would have been if one had been the plaintiff and the other had been the defendant. The principle proceeded upon is equally as applicable to the effect of this judgment, for the people were no more than the nominal party. The real party was the plaintiff and the defendant. It was their rights alone which were the subject of investigation, and decided by the judgment; and that judgment was conclusive, in the way of establishing the fact that the plaintiff had been unlawfully expelled and deprived of his rights as a member of this association, and so far as he suffered loss by this wrongful act of the defendant he was entitled to be indemnified in this action.
The further ground-work of his case was that, as this expulsion made it the duty of other members of the assocition not to be employed in bands or orchestras or otherwise with him after his expulsion, he had been deprived of his employment, and had been subjected thereby to serious injury and loss; and it was necessary that this loss should be substantially proved, at least to entitle him to anything more than nominal damages in the action (Leeds v. Metropolitan Gas Light Co., 90 N. Y. 26). As an item of evidence in the way of establishing the plaintiff's complaint that he had by this expulsion been deprived of his employment, he was allowed to prove, against the exception of the defendant, that a black-list was kept in its office. • From the fact of this list being there posted and maintained, it could *256 very naturally be inferred that it was there by the authority of the defendant; and for that reason the court would not have been justified in maintaining the objections taken to the proof of the posting of this list. It was pertinent evidence in the action, for it consisted of a fact tending to make the prohibition of "the by-laws effectual, that no member of the association should permit himself to be employed with the plaintiff after he had been expelled from his membership, and the necessary effect of that would be to diminish the plaintiff’s means of employment.
To prove that he had been deprived of employment by this conduct of the defendant, he proposed and was permitted to show what his earnings were while a member of the association, and how much they had diminished, and his inability to obtain continual employment after his expulsion. The defendant’s counsel objected to this proof as incompetent, irrelevant and immaterial. But the court overruled the objections, and received the evidence ; and this ruling seems to have been warranted by the peculiar nature of the action, for it would be impossible for the plaintiff to prove to a certainty that he had been injured, in his ability to obtain employment by his wrongful expulsion from the association. The only manner in which this fact could be proved, if it could be maintained at all, was by showing circumstances indicating the probable result, under the constitution and by-laws, of the act of the plaintiff’s expulsion ; and evidence of his employment and earnings while he was in good standing in the association, and the diminished amount of that employment and earnings after his expulsion, and his posting as an expelled member, was the only accessible mode through which the existence of the fact alleged could be maintained. If this proof could not be given, then, whatever might in fact have been the extent of the injury and loss suffered by the plaintiff, the law would afford no means, for recovering it in the action. It would sacrifice his right to indemnity to his inability to prove his case; and that the law is not chargeable with having done. But, on the con *257 trary, where a wrong has been perpetrated, it permits the best evidence to be given to establish the right of action that the nature of the case will permit; and this was the best and the only proof which could be made by the plaintiff to sustain his action; and that the court was right in receiving' it is reasonably well supported by the authorities. A point of this description arose in the case of Walker v. Erie Railway Co. (63 Barb. 260). There, to prove the extent of the plaintiff’s loss by the injury, he was allowed to show the amount and income from his profession as a lawyer during the preceding year; and that was considered to be within the rule of evidence sustained by the authorities (Id. 265). And like evidence was allowed to be given in Beisiegel v. N. Y. Central R. R. Co. (40 Id. 9, 10). In Bagley v. Smith (10 Id. 489), the action was for damages for the breach of a partnership contract caused by dissolving the firm before the time mentioned in the agreement; and it was there held that evidence of the gains and profits of the partnership business during its continuance was admissible, as indicating the extent of the plaintiff’s loss and injury by reason of the unlawful dissolution of the firm. In Metcalf v. Baker (57 Id. 662), the action was for a wrong by which the plaintiff had received an actionable injury ; and the court held that the loss sustained by him in his practice as a physician was a ground for awarding damages; and that, of course, could only have been proved by showing the extent and income of his previous professional practice, and his inability to vigorously pursue it after the injury had been sustained. A like ruling was made in Schile v. Brokhahus (80 Id. 614). There the plaintiff was permitted to prove the amount of business and profit derived from it prior to and subsequent to the wrong, as an indication of the damages sustained by him ; and this evidence was held to have been legally received in" the final decision of the action. There is no substantial ground for distinction between the proof which it was held could be legally given in these cases and the proof received upon the trial of this action, as to *258 the plaintiff’s earnings before and after the wrong suffered by him in his expulsion from his membership.
It has been further insisted that this evidence supplied no criterion by which the jury could measure or ascertain the plaintiff’s loss or injury. But this position is incapable of being maintained; for, under all the authorities, the plaintiff was entitled to recover a compensation for the loss naturally or proximately resulting from his expulsion. That is the legal rule acknowledged by all the authorities; and it was in no manner doubted or disputed by the cases of Association v. Dubuque (30 Iowa, 176), or Donnell v. Jones (13 Ala. 490). But practically its correctness has been uniformly conceded and acted upon ; and this evidence tended to prove that loss ; and it was applied no differently from the course sanctioned by the authorities in the trial of this action, or in its submission to the jury by the court. In Vicars v. Wilcocks (8 East. 1), the damages denied to the plaintiff were those resulting from his unlawful and unjustifiable discharge from service, that was not caused by defendant’s wrong, but by reason of the improper action of a third person upon information proceeding from him. The discharge was a distinct and separate wrong in itself, for which, upon no well-established principle, could the defendant be held to be liable. This subject was further considered in Sneesby v. Railway Co. (L. R. 9 Q. B. 263). But the decision in that case did no more than to carry out this legal principle, so far as to render the defendant liable for injuries to which its wrongful act had naturally and necessarily exposed the plaintiff’s property. Neither the case of Groat v. Gillespie (25 Wend. 342), or Hargous v. Ablon (5 Hill, 472), nor either of the other authorities to which attention has been directed, sustain the position which in this manner has been taken by the defendant; and the direction given to the case at the trial fully accorded with what was held to be the law in Blanchard v. Ely (21 Wend. 342), and the authorities referred to in the opinion. The court was right in receiving this evidence, and it was sufficient to justify the action of *259 the jury, for it tended quite directly to prove the fact to be that the plaintiff had been deprived of a large part of his previous employment by this unlawful expulsion from the association. •
An exception was taken to the allowance of proof of what was said as the reason assigned for the plaintiff’s discharge from Palm Garden. But no more was received than .accompanied the plaintiff’s discharge. lie was then informed that he was not wanted, but that musicians of the Musical Protective Union were the persons to be employed.
The defendant proposed to prove the proceedings, in part at least, resulting in the plaintiff’s expulsion. That was not allowed by the court, for the reason that the judgment already mentioned had determined this removal to be unauthorized and unlawful. This part of the case had been fully fried in the mandamus proceedings, and the judgment there recovered was final and conclusive against the defendant. It was admissible for the plaintiff to prove the manner and place in and at which musicians were employed in the city ■of New York ; and the exceptions taken to the allowance of that proof, and the denial of motions to strike it out, cannot be maintained. It was proposed to show by the witness Amberg that he would not have employed the plaintiff as he had if it had not been for a boycott that he and oth•ers had placed upon a theatre in which this employment had taken place. This evidence was excluded, and the defendant excepted to the ruling. ■ No harm was done to the defendant in excluding this proof. The important fact, so far as it had relation to the controversy, was that the plaintiff had been employed, and the extent of that -employment, and the amount received by him for the services there rendered. That was not only material to the plaintiff’s case, but also by way of diminution of the amount he might otherwise, in the judgment of the jury, be considered entitled to recover against the defendant. But how this employment came to be made was an entirely immaterial inquiry. A very large number of other objections were taken in the course of the *260 trial, and exceptions reserved to the ruling of the court in its-disposition of questions of evidence. Those which appear to be by any possibility involved in doubt have been consid- • ered. But these other objections seem to be without the least reason for their support. Nearly everything proved, or proposed to be proved, against the defendant, was made-, the subject of objection; and, as they were in large part' clearly without foundation, it cannot be necessary to devote-time to their disposition.
At the close of the case exceptions were taken to the manner in which the court is stated to have submitted it to-the jury. These exceptions were massed together; and the directions stated to be the subject of the exceptions are not wholly found to correspond with those contained in the-charge. That presented no more than the legal grounds-upon which the action had been tried and defended, and it submitted the case to the jury in strict conformity to the-legal principles and authorities as to the right of the plaintiff to recover which have already been mentioned. There is no ground whatever upon which the verdict could be set aside- or the judgment reversed; and both the order and judgment, should' therefore be affirmed.
Van Brunt, P. J., and Brady, J., concurred.
Notes on the Bights of Action and the Bemedies in case of' Strikes, Boycotts, and other combinations AFFECTING EMPLOYMENT OR VOCATION.
The present state of the law may be most usefully shown by stating the cases thus far decided, in three classes : Civil-Actions, Criminal Prosecutions, and Proceedings for Contempt. Of course the principles laid down in a case of either class will be found instructive and useful as bearing on the cases of other classes.
I. Civil Actions.
History of the earlier civil cases.] John H. Wigmore, Esq., in an article in 21 Am. Law Rev. gives the following condensed account of the earlier cases :
“ Apparently the earliest instance appearing in the books is the- *261 threatening of tenants in life and limb, ‘so that they departed from their tenures, to the plantiff’s damage.’ (9 H. 7, 7 [1494], ). The case was not an uncommon one, for there was a writ (Reg. Brew. 111: Quare tenentíbus de vita et mutilatione membrorum suorum comminatus fuit) specially adapted to the exigency, and frequent mention occurs, in .arguments and judicial remarks, of such an action (21 H. 6, 31 [1443]; 35 H. 6, 45 [1457]; 20 H. 7, 5 [1505]; 14 E. 4, 7). It was often said, particularly in the abridgments and treatises, to lie to the- cause of tenants at will only (Rolle, Acc. sut Case, (N) pl. 21; Fitzh. A. sur C. 21; Viner, A. sur C. (Ne) 21; Pulton De Pace Regis, “Menace” 5 ; 14 E. 4, 7 ) ; but the cases do not authorize the distinction and the writ makes no mention of it. Clearly, however, the loss of a voluntary tenant through violent intimidation was actionable. So also, it appears ‘ if the comers to my market are disturbed or beaten, by which I lose my toll, I shall have a good action of trespass on the caso.’ 11 H. 4. 47 [1410]; 29 E. 3, 18 [1356]; Holt in 11 East, 576; Cf. 41 E. 3; 24 B. 1368. Many analogous cases appear, but they rest probably on some ground or franchise or prescription. We hear also of an action by the Abbot of E. for roughly disturbing the people who came to his chapel, so that the good Abbot lost the value ■of the offerings (Bellewe, A. sur C. [1396] ). But while violent acts thus suffered their reward, peaceful interference by means of persua.sion or otherwise was never made ground of a recovery. It was held .that if a new school was set up in a town, so that ‘ whereas the plaintiffs were used to get for a child 40d. or 4s. per quarter, now they ■cannot get but 14d.’ no action lay against the enterprising pedagogue (11 H. 4, 47 [1410]), and so, too, where a new miller diverted the plaintiff’s trade (22 H. 6, 14 [1444]. In these instances a violent interference with the customers would have been actionable, as Holt remarks in commenting on the former (11 East, 573, note). It is to be observed that in Pulton’s statement of the law as to menaces {supra; first published in 1609), his phrase is broad as to the relations that may be unlawfully interfered with, ‘ or any other person by whom he liveth or receiveth benefit.’ ”
In a line with the foregoing cases, and citing almost the latest of them (9 H. 7, 8), though not until more than one hundred years after-wards comes the next case, Garrett v. Taylor (Cro. Jac. 567 [1621]). An action was granted for ‘ threatening to mayhem and vex with •suits ’ the plaintiff’s customers and workmen, ‘ whereby they durst not work or buy.’ In Iveson v. Moore (1 Salk. 15 ; 12 Mod. 262 [1699]), the defendant for the purpose of diverting the plaintiff’s custom to his own coal mine, blocked up the highway leading to that of the plaintiff, who complained that “Carbones sui pro *262 defcctu emptorum magnopere depreciati derenerunt." Two judges-were against the plaintiff because it was not sufficient to say ‘ buyers could not come, without showing buyers were coming and were hindered.’ The other two judges held the complaint good, and spoke expressly of the analogy of the master’s action per quodT serritium amisit. On appeal the case was adjudged for the plaintiff. Tarleton v. McGawley (Peake, 270, [1794]) a nisi prius case (not next in order of time, but best paced here) was an action for firing' upon natives on the coast of Africa, and thereby preventing them from trading with the plaintiff, and Lord Kenyon granted the action without hesitation.
Notes oe Cases.
1. Proeuring plaintiff to be discharged.] Chipley v. Atkinson, 1 So. Rep. 934 (Fla.).
Atkinson was in the employ of tiie firm of Kehoe & Walker, as superintendent of their brick business, under a contract of service for an indefinite period. Chipley, tiie general manager of the Pensacola & Atlantic Railroad Company, refused to furnish to the firm of Kehoe- & Walker a side track to their brick yard, which he had previously promised to do, unless Atkinson was discharged from the service of such firm. Atkinson was thereupon discharged. Atkinson then sued! Chipley for damages for the procuring of his discharge.—Held, that the action would lie and that damages were recoverable. That the-fact that no contract, nor any legal right of the employee as against the employer is violated by the employer, oc that no action could be maintained by the employee against the employer for the discharge, does not prevent a recovery against a third person who has maliciously procured the discharge. But an act done or attempt made to procure such discharge will not alone support an action. The actual procurement of the discharge must be shown.
2. Inciting strike.] Old Dominion Steamship Co. v. McKenna, (U. S. Circ. Ct. St. of N. Y.) 18 Abb. N. C. 262; s. c., less fully, 30 Fed. Rep. 48.
Plaintiff sued for $20,000 damages alleged to have been sustained by it through the unlawful action of the defendants in certain strikes of longshoremen, in their attempt to boycott the plaintiff in its business as a common carrier. The delendants styled themselves an ‘‘Executive Board of the Ocean Association of the Longshoremen’s Union.”' The defendants sought to vacate an order of arrest, under which they were arrested at the time of the commencement of the action.—Heldr that the procurement of workmen, who are employed upon terms which are just and satisfactory, to quit work in a body, by persons who arce *263 not in his employ, and until the employer should accede to demands of such outside persons, constitutes in law a malicious and illegal interference with the employer’s business, which is actionable; and is also a misdemeanor at common law as well as by Pen. Code N. Y. § 168 ; that all combinations or associations designed to coerce workmen to become members of such combinations, or to interfere with, obstruct, vex or annoy them in working, or in obtaining work, or designed to interfere with the perfect freedom of employers in the proper management and control of their lawful business, are pro tanto illegal-combinations and associations, and all acts done in furtherance of such intentions by such means are actionable.
3. Action for boycotting.] Bauchman v. Richmond Typographical Union (Richmond, Va., Circ. Ct., Feb. 8, 1887).
Action on the case for damages for boycotting plaintiff’s business. Demurrer because the damages were too remote. —Held, that such objection was untenable. That the declaration did not allege damage merely by the prevention of a probable future trade, but by the destruction of an existing profitable trade. That the circular of the defendants addressed to every customer, clearly contemplated his withdrawal of his dealings with the plaintiffs as an immediate damage to their business.
4. Refusal to buy or employ.] Rogers v. Dutt, 13 Moore P. C. 209.
The appellant, Rogers, was the superintendent of marine, at Calcutta. In such capacity he issued an order to the Bengal Pilot service, prohibiting them from allowing a particular steam tug to take any ship in tow of which the pilots in that service should have pilotage charge, made in consequence of what the superintendent deemed an exorbitant demand on the part of the owner of the steam tug; whereby such owner was deprived for a time of the profits of being employed by the pilots. Thereupon the respondent, Dutt, and others, brought an action against the appellant for damages. —Held, that the action could not be maintained. That the public, or individuals, had a right to deal with plaintiffs or not, at its pleasure, and that the right to buy or to refuse to buy is as much to be regarded as the right to sell or to refuse to sell. That a refusal to buy was not an unlawful means of coercion.
5. Threats to discharge.] Payne v. R. R. Co., 13 Lea. (Tenn.) 507; s. c., 20 Cent. L. J. 7.
Action for threatening to discharge employees if they traded at the plaintiff’s store.—Held, that to discharge the employees was a legal act, and therefore a threat to discharge was not actionable, though the plaintiff’s trade suffered loss thereby. That the instances in which such a loss, had been held actionable, violence or some statutory mis *264 demeanor had been committed; in others, fraud, duress, or libel were resorted to.
6. Heywood v. Tillson, 75 Me. 227.
Plaintiff brought an action for loss of patronage effected by the defendant’s threats to discharge all workmen who rented from the plaintiff.—Held, that as the defendant was under no legal obligation to employ the workmen, he did plaintiff no wrong in refusing to employ them or in threatening so to refuse, even though such refusal was through malice or ill-will to the owner.
7. Hissing off the stage.] Gregory v. Duke of Brunswick, 6 M. &. G. 205.
Plaintiff, an actor, complained that the defendant, with others in pursuance of a conspiracy, had succeeded in hissing him off the stage, and that in consequence, the manager of the theatre refused to employ him again. Defendant sought to justify the hooting, hissing and groaning on the ground that plaintiff was, for certain reasons specified in the plea, an unfit and improper person to appear before the public. —Held, that such plea was bad, as containing no answer to the charge of conspiracy, but merely singling out and attempting to justify one of the overt acts of the alleged conspiracy.
8. Enticing away.] Boston Glass Manufactory v. Binney, 4 Pick. (Mass.) 425.
Plaintiff charged some of the defendants with enticing from the plaintiff’s employment certain workmen skilled in glass making, and taking them into the service of other defendants. It seems that at the time the workmen were enticed away, the period for which they were hired had expired.—Held, that to induce a servant to leave his master’s service when the time for which he has hired himself shall expire, although he had previously no intention of quitting such service, is not the subject of an action.
9. Walter v. Cronin, 107 Mass. 555.
Plaintiff was. a manufacturer of shoes, and employed many shoemakers ; the defendant molested plaintiff in carrying on the business, and induced- many shoemakers who were in his employ, and others who were about to enter it, to abandon it without his consent, and he thereby lost their services, incurred-large expenses in procuring other workmen, and was compelled to pay larger prices for labor than he otherwise would. Plaintiff sued defendant for the damages sustained.— Held,' that the acts of the defendant were unlawful and unwarrantable, and that plaintiff might recover. Every one has a right to enjoy the fruits of his own enterprise. He has no right to be protected against competition, but he has a right to be free from malicious interference.
*265 10. Controlling the shipping of'sailors.] Bowen v. Matheson, 14 Allen (Mass.) 499.
Defendants were members of the Seamen’s Mutual Benefit Association, the object of which was to control the business of the shipping masters of Boston, by requiring the members to conform to certain rules and. rates, and to prevent their sailor boarders from shipping in any vessel where any of the crew were shipped from boarding houses not in good standing with the association. The defendants, acting under orders from the association, refused to furnish and ship men to the plaintiff, took men out of ships owned by plaintiff, and prevented others from shipping with him, and notified his customers and friends that he could not ship seamen for them, thereby breaking up plaintiff’s business.—Held, that there was nothing criminal in the objects and purposes of the association, and nothing illegal. If their effect was to destroy the business of shipping masters who were not members of the association, it was such a result as in the competition of business often follows from a course of proceeding that the law permits.
11. Penalty against members cutting wages.] Master Stevedores’ Association v. Walsh, 2 Daly, 1.
The by-laws or pledge of an incorporated association of master workmen, subscribed by the defendant, provided that any member of the association found guilty by its committee of working for less prices than those fixed by the association, should forfeit to it twenty-five per cent, of the price fixed for the same work, the penalty to be collected in the name of the association by process of law.—Held, on demurrer to the complaint in an action by the association to collect such a penalty, 1. That such an association was not an unlawful combination to commit any act injurious to trade or commerce. 2. That such a by-law or pledge was not unlawful as made in restraint of trade. 3. That the by-law, being one which the association had the power to make, the association had also the power to attach to its violation a penalty. 4. That it is not unlawful for any number of journeymen or master workmen to agree on the one part that they will not work below certain rates, or on the other that they will not pay above certain rates; but any association or combination for the purpose of compelling journeymen or employers to conform to any rule fixing the rate of wages, to which they are not parties, by the imposition of penalties, by agreeing to quit the service of employers, or by threats, intimidations, etc., is a conspiracy for which the parties entering into it may be indicted.
12. Imposing penalty by threat to cause workmen to leave.] Carew v. Rutherford, 106 Mass. 1.
Plaintiff sued the defendants who composed an unincorporated association known as the “ Journeymen Freestone Cutters’ Association of *266 Boston,” to recover back the sum of §500 alleged to have been extorted1 from the plaintiff by such association. Plaintiff had contracted to furnish cut freestone for various buildings in Boston, and had sent to New York to be executed, some of the freestone cutting to be done under his: contracts. The association at a meeting subsequent to such conduct of plaintiff, voted that plaintiff should pay to the association the sum of $500 as a penalty imposed upon him by the association, because he had' sent to New York to have the stone cutting done, when he might have employed journeymen at Boston. Upon the threat of certain members of the association that all association men in plaintiff’s employ would desert at once unless the fine was paid, plaintiff paid the fine.—Held, that a conspiracy to obtain from a master mechanic, whose business requires the employment of workmen, money which he is under no legal liability to pay, by inducing or threatening to induce workmen to leave his employ, and deterring others from entering it, is illegal; and in an action of tort he may recover the sum so paid, and damages for the injury of his business, by the acts of the conspirators. But also,—Held, that it is not unlawful for any number of persons, without an unlawful object in view, to associate themselves together and agree that they will not work for or deal with certain men or classes of men, or work under a certain price, or without certain conditions.
13. Lodge restricting apprenticeship and employment.] Snow v. Wheeler, 113 Mass. 179.
Plaintiff Snow and five others on behalf of themselves and other-members of the North Brookfield Lodge, No. 28, of the order of the Knights of St. Crispin, filed a bill in equity, to compel the defendants Wheeler and Duggan to draw an order upon a certain bank, also made a defendant, to enable the plaintiff to withdraw from the bank a deposit made by the defendants Wheeler and Duggan, in their name as trustees, but acting as a committee of the lodge. The said defendants admitted that they received the money from the treasurer of the lodge, and that they deposited it in the bank as trustees, but refused to draw the order requested, and set up among other defenses, that the lodge was formed for illegal purposes. The object of the lodge as expressed by its constitution, was to rescue the boot and shoe trade from the condition it had fallen into, and to secure its members against any further encroachments from manufacturers. Each member signed an agreement “not to teach any new hand any part of the boot or shoe trade without the permission of the lodge.” Upon the hearing before a master, there were put in evidence various resolutions of remonstrance, etc., passed by the lodge, as-to the hiring of apprentices by manufacturers, members or non-members. It was also shown that the lodge caused investigating committees to-call upon such manufacturers and to request them from employing cer *267 tain persons.-—Held, that the evidence elicited did not show that the purpose of the lodge was unlawful; that the attempt by co-operation to increase wages by diminishing competition, is within certain limits-lawful and proper. That members of a trade have a perfect right to instruct whom they choose in the mysteries of their trade, and to use all proper and lawful means, without attempting coercion, to induce-employers from employing others than those skilled in the trade. That, therefore, the defense set up was untenable, and plaintiffs should be entitled to recover.
14. Jngvnstion.]. N. Y., Lake Erie & W. R. Co. v. Wenger, W’kly Law Bull. (O.) May 9, 1887.
Motion to dissolve injunction. Plaintiff in its petition for an in junction, alleged that the defendants/1 are now out on a strike, and are refusing to perform their accustomed labor and duties under their employment.” That the defendants conspired for the unlawful purpose of preventing plaintiff from moving its freight cars, and by intimidations and threats of violence prevented other persons from engaging in plaintiff’s employ, and induced persons already in such employ, by like-means, to leave the employment, thereby causing plaintiff great damage. —Held, that men have a constitutional right “to assemble together in-a peaceable manner to consult for their common good,” but an assem-. bling of men for the purpose of forming a combination to go upon the premises of a railroad company to obstruct its business, and to prevent, by force or threats, its employees from performing their duties, is an unlawful assembling.
15. Springhead Co. v. Riley, L. R. 6 Eq. 551.
Defendants, who were officers of a trades union, gave notice to-workmen, by means of placards and advertisements, that they were not to hire themselves to plaintiffs pending a dispute between the union and plaintiffs. Plaintiffs prayed for an injunction to restrain the issuing of the placards, alleging that by means thereof, defendants had intimidated and prevented workmen from hiring themselves to plaintiffs, and they were thereby prevented from continuing their business, and the value of their property was seriously injured.—Held, upon demurrer, that the acts of the defendants amounted to a crime, and that the court would interfere by injunction to restrain such acts, inasmuch as they also tended to the destruction of property.
16. Gilbert v. Mickle, 4 Sandf. Ch. 357.
Plaintiff alleged that defendant paraded before the door of plaint-. ifPs -auction store, and also posted the same in a conspicuous position; in front of the said store, during business hours, a placard .cautioning strangers to beware of-mock auctions.—Held, upon an application for *268 .an injunction, that such placard constituted a nuisance remediable by injunction. That it was no objection to the jurisdiction that the placard may also be treated as a libel.
17. Johnston Harvester Company v. Meinhardt, 9 Abb. N. C. 393 ; nffi’d, 24 Hun, 489.
Motion by plaintiff for an injunction against defendants restraining them from interfering with the business of plaintiff, or intermeddling with any person in the employ of the plaintiff. Plaintiff was a business corporation engaged in the manufacture of agricultural implements.
Plaintiff alleged that the defendants were members of an association ■ known as the “Iron Moulders’ Union,” and that they combined together to prevent the plaintiff from supplying the places of the iron moulders who left its employment, and to prevent iron moulders whom the plaintiff had hired, or was about to hire, from entering into plaintiff’s employ, unless plaintiff would pay the scale of wages prescribed by said “Iron Moulders’ Union,” and submit to the other requirements thereof; that, in pursuance of such confederacy, the .defendants did interfere, and prevented persons from hiring to the plainttiff, sometimes by persuasion, and sometimes by threats.—Held, that the orderly and peaceable assembling or co-operation of persons employed in any trade or handicraft for the purpose of securing an advance in the rate of wages, or for the maintenance of such right, is permitted by statute L. 1870, c. 19.
That this statute does not, however, permit an association or trades union so called, to do any act which each one of such persons in his individual capacity, had not a right to do before the act was passed. That the action of such association in intimidating or coercing a fellow-laborer so that he shall leave his employer’s service, is a trespass upon the rights ■of the employer, .and that if it compels by coercion a fellow-craftsman to leave the employ of another, it commits an offense against the rights such person.
18. Attempt to secure monopoly.] Mogul Steamship Co. v. McGregor, 23 Q. B. D. 598; affirming 21 Q. B. D. 544.
Defendants, who were firms of ship-owners trading between'China and Europe, with a view to obtaining a monopoly of the homeward tea trade, and thereby keeping up the rate of freight, formed themselves into an association, and offered to such merchants in China as shipped their tea exclusively in vessels of members of the association, a rebate of 5 per cent, on all freights paid by them. Plaintiffs, who were rival ship-owners trading between China and Europe, were excluded by defendants from all benefits of the association, and in consequence of such ■exclusion sustained damage.—Held, that the association being formed by the defendants to keep the trade in their own hands, and not with. *269 the intention of ruining the trade of plaintiffs, or through any malice or ill-will towards them, was not unlawful, and that no action for conspiracy was maintainable.
19. Threat to withdraw.] Walsby v. Anley, 3 E & E. 516.
Anlcy, the respondent, carried on the trade of a builder, and employed a hundred workmen. In the year 1859 there had been a strike of workmen in the building trade, and the respondent resolved not to-employ any workmen who declined to work under the declaration. This declaration was as follows: “I declare that I am not now nor will I become, a member of, or support any society which directly or indirectly interferes with the arrangements of this or any other establishment ; and that I recognize the right of employers and employed individually to make any trade engagements which they may choose to-agree upon.” Thereafter, and when respondent had in his employ two-men working under the declaration, the appellant, Walsby, and thirty other workmen came to respondent and declared that unless respondent discharged the two men, they would withdraw from the service. Upon respondent’s refusal to accede to the demands, appellant withdrew. Defendants were arrested and convicted under G G. 4, c. 129, § 3, which constitutes “ an offense punishable by imprisonment,” by threats or intimidation, to force or endeavor to force any person engaged in trade-to limit the number or description of his workmen.—Meld, that the-conviction should be affirmed.- That every workman who is in the service of an employer, is entitled to the free exercise of his own discretion as to whether he will or will not continue in that service ; that the statements of their intention by appellants, constituted a threat, and were intended to intimidate respondent in the choosing of his workmen.
20. Threat to call off.] Skinner v. Kitch, 10 Cox's C. C. 493.
The appellant (Skinner) secretary of a body of the General Union-of Carpenters and Joiners, delivered to Kitch the respondent, a builder, the following notice: “ Mr. William Kitch, Sir,—I am requested by the committee of carpenters and joiners to give the men you employ notice to come out on strike against James Jordan unless he become a member of the above society. This notice will be carried out, unless settled in accordance with the society’s laws. ”—Held, that the appellant had thereby brought himself within the operation of the third section of 6 G. 4, c. 129, which provides that if any person shall force, by threats, etc., any manufacturer or person in trade, to limit the number of his workmen or servants, he shall, being convicted thereof, be imprisoned, etc.
*270 II. Criminal Gases.
History of the English criminal law on this subject, 21 Am. Law Rev. 41; Wright's Law of Criminal Conspiracies, with American Cases by Carton, Phil. 1887; Paper by Tracy Becker, N. Y. State Bar Asso. Reports, vol. 10; Note to State v. Stewart, in 4 New Engl. Rep. 379; .Series of articles in Legal Adviser (Chicago), in 1887.
21. Agreement not to work for another.] Commonwealth v. Hunt, 4 Metcalf, 111.
The defendants were members of the “ Boston Journeymen Boot-makers’ Society." By resolution it was agreed that the members of •such society should not work for any master bootmaker or other person rvho should employ any journeymen or other workmen who should not be a member of such society, after notice given to discharge such workman. In pursuance of such object, the defsndants compelled one Wait to turn out of his employ one Horne, a journeyman shoemaker, because the latter refused to pay a fine imposed by the society for an infringement of its by-laws, and also prevented Horne from obtaining employment until he should pay the fine, whereby it was alleged Horne was greatly impoverished. The defendant was indicted for conspiracy.— Held, that there was nothing unlawful in the purpose for which the •association was formed ; that associations may be entered into, the object of which is to adopt measures that may have a tendency to impoverish another, and yet so far from being criminal or unlawful, the object may be highly meritorious. The legality of such an associ-’ ation, therefore, depends upon the means to be used for its accomplishment. If it is to be carried into effect by desirable or lawful means, it is innocent; if by falsehood or force, then only may it be stamped with the character of conspiracy.
22. Molesting workmen.] People v. Fisher, 14 Wend. 1.
The defendants were indicted for a conspiracy. The indictment set forth that the defendants, journeymen shoemakers, with other persons, also journeymen shoemakers, unlawfully united themselves into an unlawful club and combination, and conspired together to prevent any journeyman boot and shoemaker in the village ■of Geneva from working in his trade below certain rates prescribed by the defendants, and also caused to be made certain unlawful and arbitrary by-laws, rules, constitutions and orders among themselves, thereby unlawfully intending to regulate and control themselves and other journeymen shoemakers in Geneva. That thereafter the members of such combination withdrew from the employ of one Lum, because JPennock, one of the members, had broken the by-laws of the associ *271 .ation by working for Lum for less ,than the prescribed rates; and that they agreed among themselves that they would thereafter refuse to labor for any employer who should employ the said Pennock.—Held, that the acts of the journeymen constituted a conspiracy and indictable as such.
23. State v. Stewart, 59 Vt. 273.
Defendants were indicted for a conspiracy to prevent the Ryegate tiranite Works Corporation from employing certain granite cutters, and preventing certain laborers from working for this company.—Held, that the labor and skill of the workman, the plant of the manufacturer, .and the equipment of the farmer, are in equal sense property; every man has the right to employ his talents, industry and capital as he pleases, free from the dictation of others; and if two or more persons ■combine to' coerce his choice in this behalf it is criminal conspiracy, whether the means employed are actual violence or a species of intimidation that works upon the mind.
24. Reg. v. Hewitt, 5 Cox's C. C. 162.
This was an indictment for a combination by workmen, contrary to 6 G. 4, c. 129, and for a conspiracy. The defendants were members of a club or society called “ The Philanthropic Society of Coopers,” a society formed to relieve members when sick, and to provide for their funerals. One of their members was fined by them for working in a yard where steam machinery was used, and upon non-payment of the fine, they acted in such a way as prevented him from obtaining work. Held,—that such society was an illegal combination and conspiracy; that while such societies will be protected when acting lawfully and in pursuance of charitable purposes, they must not be allowed to interfere with the free will and the exercise of the industry of their members..
Reg. v. Duffield, 5 Cox's C. C. 404.
P., a manufacturer, having been applied to by R., the secretary of a trade society, to adopt a particular scale of prices, refused to comply, and immediately afterwards the defendants and R. were severally seen about the manufactory of P., in conversation with his workmen, and at the same time a placard was circulated, stating that P.’s wages were below the average. This was followed by the ■desertion of P.’s workmen.—Held, (1), evidence of a conspiracy by the defendants to induce and persuade P.’s workmen to leave his service. (2) That it is a clearly established rule of law that workmen have a right, while they are perfectly free from engagement, to agree among themselves■ that they will not enter into any employment unless they can get a certain rate of wages; but workmen have no right to combine together to persuade men already hired by and in the employ *272 of other masters to leave that employment, for the purpose of compel ling those masters to raise their wages.
25. People ex rel. Gill v. Walsh, 15 State Rep. 17; affi’d, 110 N. Y. 688. Appeal from order dismissing writ of habeas corpus.
The defendants were arrested and committed for conspiring to prevent complainant, one Hartt, from engaging in his trade and occupation. The complainant was designated by workmen as a “ scab,” which denoted one who worked for less wages than the standard or rate set by the labor unions.—Held, that the acts of the defendants in driving away and preventing complainant from working, constituted a conspiracy pronounced bylaw to be criminal, and punishable by imprisonment—that any person has the right to labor when he can procure employment, and in that respect is entitled to the fullest protection.
26. Demanding workman's discharge.] People ex rel. Gill v. Smith, 10 State Sep. 730.
The relator and certain other members of the executive committee of District Assembly 91, Knights of Labor, in the City of New York, wore arrested for alleged unlawful interference with the employees of certain shoe manufacturers. In one case the committee demanded the discharge of a certain employee because he refused to join the Knights, and in the other, the discharge of a foreman was demanded under threat of, a strike in case the demand was not complied with. The committee were brought before the court of oyer and terminer on writs of habeas corpus and certiorari.—Held, that the Penal Code, § 170, permits orderly and peaceable co-operation either to advance or maintain the rate of wages. That as an incident to this authorized co-operation, that is, to render it effective, a resort to all lawful means of enforcement is allowed. That where there is no relation, direct or indirect, between wages and strikes, the combination which brings the latter about for unlawful purposes is a criminal conspiracy. That the strike then involves an injury to the community, and an act injurious to trade.
Penal Code, § 170, provides among other things, that the orderly and peaceful assembling or co-operation of persons employed in any calling, trade or handicraft for the purpose of obtaining an advance in the rate of wages or compensation, or of maintaining such rate, is not a conspiracy.
27. Picketing.] Reg. v. Druitt, 10 Cox's C. C. 592.
Indictment for conspiracy, by unlawful ways and contrivances, to impoverish one Poole and others in their trade, and to restrain the freedom of trade and personal action. The defendants were operative *273 tailors, and members of a trade union of tailors. The workmen, at the instigation of the union, having struck for wages, and the masters having employed persons not members of the union, the defendants caused “pickets” to be stationed about the doors of such employers to note who went in, and for the purpose of deterring them from continuing in such employ, and inducing them to join the union. Proof was given of the use of insulting expressions and gestures used by the “pickets ” to the non-union people.—Held, That by the common law, liberty of a man’s mind and will, how he should bestow himself and his talents and industry, were as much the subject of the law’s protection as was that of his body. Therefore, if two or more persons agreed to co-operate against that liberty of thought they would be guilty of conspiracy. And if any person by threats, intimidation or in any other way, endeavor to deter or influence any person in the employment of his industry, he would be guilty of an offence against the statutes.
“ Picketing ” done in a way to excite no reasonable alarm, and not to coerce those who were subject to it would not be an offence, but if the pickets were so placed, as in the judgment of the jury would be likely to have a deterring effect in the minds of ordinary persons, it would be unlawful.
28. Judge v. Bennett, 84 Law Times (Eng.) 58.
Plaintiff having dismissed some of her work-people, defendant, representing a trade union, wrote her manager a letter informing him that unless he “ started ” the whole of the workmen, all would strike, and the shop would be “picketed” until he complied. PlaintMf failing to comply, the shop was picketed, two men being posted opposite it for several days, resulting in a disorderly crowd outside, and the aid of the police had to be invoked. The defendant was convicted under section 7 of the Conspiracy and Protection of Property Act 1875, which provides among other things that it is a felony for two or more to “ watch or beset ” a house. The court held that the picketing in this case was a “watching or besetting” within the statute, and further, that the threat to picket contained in the defendant’s letter amounted to an attempt to intimidate, which is also an offence under the statute.
29. Obstructing business.] People v. Petheran, 81 Northw. Rep. (Mich.) 188.
Defendant, who was the chief engineer of the Chicago So West Michigan Railway Company, and others, were indicted for conspiring to obstruct the business of the Newayo Manufacturing Company, under section 9275, How, St. Mich., which provides that “ if two or more persons shall wilfully and maliciously combine and conspire together to obstruct the business of any corporation, such persons shall, on conviction, be punished,” etc.—Held, 1, That specific acts done in pursu *274 anee of the conspiracy need not be alleged; and the fact' that on the trial of the information, the court treated it as charging the defendant with having done the acts, which it charged him. with conspiring to do, and admitted evidence of the doing of such acts, is not error, as it was competent to show the conspiring as charged; that it operated to prove a crime greater than that "charged did not prevent conviction for the less offense; 2. That the fact that defendant was charged with conspiracy with N. and L., and the defendant was the chief engineer of a railway company, and N. and L. were his subordinates, does not make him the sole mover to defeat the charge of conspiracy, where it is shown that all acted in concert, and it is not shown that N. and L. acted under defendant’s orders.
30. Reg. v. Rowlands, 5 Cox's C. C. 436.
The defendants were indicted for conspiring, by molesting a manufacturer, to force him to make an alteration in the mode of conducting his business, and inducing hired workmen and apprentices to leave his employment.—Held, that workmen have a right to combine for their own protection, and to ob.tain such wages as they choose' to agree to demand, but an intention to create alarm in the mind of a manufacturer, and so to force his assent to an alteration in the mode of carrying on his business, is a violation of the law. That an association, or individuals, have no right to induce workmen to leave the employ of a master, or to prevent others from entering such employ.
31. Intimidation.] State v. Glidden, 3 New Eng. Rep. 849.
By act of 1878, it was declared an offence to threaten or intimidate any person, to compel such person, against his will, to do or abstain from doing any act which such a person has a legal right to do!
Defendants were indicted for conspiracy in threatening to use means (the boycott) to intimidate the Carrington Publishing Company, to compel it, against its will, to discharge workmen objectionable to defendants, and to employ the defendants and such persons as they should name. Defendants were further charged, as a part of the same crime, with a purpose to injure and oppress certain workmen in the employ of the company, by depriving them of their employment.—Held, that the facts alleged constituted an offense within the intent of the statute. That the intention of one man, so long as he does nothing, is not a crime which the law will take cognizance of, and so of any number of men acting separately. But when several men form the intent and come together and agree to carry it into execution, this agreement is a step in the direction of accomplishing the purpose, and is a crime. That it was no answer to say that the conspiracy was
*275 Notes of Cases.
to better their own condition; to fix and. advance their rate of wages, and further their own material interest. That the fact that the threat was designed as a means to an end, and that end, in itself a lawful one, did not divest the transaction of its criminality.
III. Proceedings for Contempt.
32. Contempt to intimidate employers of receiver.] U. S. v. Kane, 23 Fed. Rep. 748.
Defendants were employees of a railroad company that was in the hands of a receiver. Becoming dissatisfied with the wages paid by the receiver, they, by threats of violence, induced other workmen to desist from working for the receiver, and to leave his employment.—Held, that the workmen had a perfect right to abandon the employment, and by persuasion or argument, induce other employees to do the same; but if they resort to threats or violence to induce others to leave, or accomplish their purpose, without actual violence, by over-aweing others by preconcerted demonstrations of force, and thus prevent the receiver from operating the road, they are guilty of a contempt of court.
33. — and seize property.] Secor v. R. Co., 7 Biss. 513.
The Toledo, Peoria & Warsaw Railway Company went into the hands of a receiver in foreclosure proceedings. During the railroad strikes of 1875, the employees of the said company did not in any manner participate in the disturbances. Fearing that violence would be used to obstruct the running of trains, application was made to tho court for assistance to keep and retain possession of the railroad property in the hands of the receiver, and the court accordingly empowered the marshal to accomplish that purpose. Thereafter a mob of strikers assembled at the Peoria depot, and by force took possession of the company’s trains, and restrained the employees from attending to their usual duties. Several of the mob were attached as for contempt, in interfering with property in the custody of the court.—Held, that property held in trust by the court for the purpose of protecting it pending foreclosure, is in the possession of the court, and any interference with it is punishable as a contempt. That where a railroad is in tho hands of a receiver, and any persons prevent the receiver from working, they commit a contempt of court, and are to be treated in as summary a manner as if the contempt were committed iu the actual presence of the court.
34. King v. Ohio & Miss. R. Co., 7 Biss. 529.
A crowd of strikers and others assembled at the depot in Indianapolis, took possession of the trains, and by force and intimidation arrested their running. The company was in the hands of a receiver in fore *276 closure. The court, on information of the facts, issued orders to the marshal, in aid of the receiver, requiring him to use his authority as marshal, under the law, to enable the receiver to operate the road. Several persons were attached as for contempt of court.-— Held, on motion to discharge the prisoners, that interference with the running of railroad trains is an offense public in its character. That a receiver being an officer of the court, whose duty it is to protect the property and operate the roads under the direction of the court, the property is considered as property belonging to the court, and entitled to its protection. •
35. Francis v. Flinn, 118 U. S. 385.
Complainant’s bill alleged that he was part owner of a pilot boat -t that the captain and other officers of the vessel were duly commissioned as pilots, and that all legal regulations had been complied with; and that defendants had combined together for the purpose of destroying his business and property by publications in the newspapers, and by divers suits (mentioning three). The bill also charged that defendants had formed a pretended partnership, and bound themselves not to serve as branch pilots in a certain district with those outside of the confederation, and that these acts would injure plaintiff’s business. The bill prayed for an injunction and the defendants demurred:—Held, that the whole gist of the complaint was that defendants did not treat plaintiff as having a right to use his vessel as a pilot boat, and had publicly so stated. That the bill furnished no ground for the interposition of a court of equity, as plaintiff had a complete remedy at law.