WILLIAM A. SNOW & others, *vs.* DANIEL W. WHEELER & others.

It is not illegal for workmen to form and act as an association for the purpose of protecting themselves against the " encroachments " of their employers, and to agree in further-ance of such object not to teach others their trade unless by consent of the society.

An association of workmen formed for a legal purpose can maintain an action for the re-covery of money belonging to them, although in attempting to carry out such purpose they have been guilty of illegal acts.

BILL IN EQUITY brought by William A. Snow and five others, on behalf of themselves and other members of the North Brook-field Lodge, No. 28, of the order of the Knights of St. Crispin, against Daniel W. Wheeler, Cornelius Duggan, and the People's Savings Bank of Worcester, to compel the defendants Wheeler and Duggan to draw an order upon the defendant bank to enable the plaintiffs to withdraw from the bank a deposit made by Wheeler and Duggan, in their names as trustees, but acting as a commit-tee of the lodge.

The defendant bank answered, admitting that $770.72 was de-posited in the name of " D. W. Wheeler or Cornelius Duggan, trustees," but declined to pay the money to the lodge without an order signed by Wheeler and Duggan, and asserted their willing-ness to pay the money under the direction of the court.

The other defendants answered denying the existence of the North Brookfield Lodge, No. 28, of the order of the Knights of St. Crispin, but admitted that they received the money from one assuming to be the treasurer of such a lodge, and that they de-posited it in the bank as trustees, the bank declining to receive it in the name of the lodge. They denied that they had been re-quested by any one, authorized so to do, to sign an order to with-draw the deposit. And denied that the plaintiffs had any right to prosecute the suit on behalf of others than themselves.

The case was referred to a master, a part of whose report was as follows :

" The North Brookfield Lodge, No. 28, of the order of the Knights of St. Crispin, is an unincorporated and voluntary association in the town of North Brookfield, in the county of Worcester, composed of persons employed as workmen in the manufacture of boots and shoes, but not including proprietors of boot and shoe manufacturing establishments who employ workmen, or their foremen. Each member upon being admitted to the association, subscribes his name to the constitution and by-laws, and also signs the following obligation : ' I will not teach or cause to be taught any new hand, any part or parts of the boot or shoe trade without the permission of the lodge of which I am a member.'

" The North Brookfield Lodge is one of numerous lodges in this state organized under similar constitutions. Delegates from these lodges constitute what is called the ' Grand Lodge of the Order of Knights of St. Crispin, for the State of Massachusetts.' Similar grand lodges exist in many of the United States and in the British Provinces in North America. Delegates from the grand lodges and subordinate lodges in the United States and British Provinces, constitute what is called the ' International Grand Lodge of the Order of the Knights of St. Crispin.' The North Brookfield Lodge was organized in 1868, under a charter from a body in Milwaukee, styling itself the ' National Grand Lodge of the Knights of St. Crispin,' which has since become a subordinate lodge. The National Grand Lodge was founded in Milwaukee in 1868, by Newell Daniels and seven others, and was the original lodge from which all the others have sprung. On the organization of the grand lodge and the international grand lodge by delegates, the Milwaukee lodge became a mere subordinate lodge of the order.

" At a meeting of the members of the North Brookfield Lodge, held August 2, 1869, the following vote was passed :

" ' Voted, That there be a committee of two chosen to deposit such money as there is on hand, in the People's Savings Bank, Worcester,' and the defendants, Daniel W. Wheeler and Cornelius Duggan, who were both members of the lodge, were chosen as

such committee. Said committee received from the treasurer of the lodge the sum of six hundred and fifty dollars, and August 31, 1869, deposited the same in the People's Savings Bank, in Worcester. Said sum was entered upon the books of the bank in the name of ' D. W. Wheeler or Cornelius Duggan, trustees,' the bank declining to enter it in the name of the lodge. The money has never been withdrawn from the bank, and now amounts with the accumulations to $770.72. The money was derived from initiation fees and monthly dues paid in by the members. September 6, 1869, a bill of $8.00 was paid by the lodge to Wheeler and Duggan for their expenses to Worcester to make the deposit.

"At a meeting of the members of the lodge held November 28, 1870, T. P. Snow and Daniel Sullivan were chosen a committee to wait upon Wheeler and Duggan and request them to sign an order so that the lodge could draw the funds deposited in the People's Savings Bank. December 19, 1870, the committee reported that they had not signed the order, but the committee thought they would sign it without doubt. February 13, 1871, W. A. Snow and A. B. Tatro were appointed a committee to see Duggan in regard to the funds in the Worcester bank. January 15, 1872, Sullivan was appointed a committee to see Duggan and get his signature to an order for the money in the People's Savings Bank in Worcester. February 12, 1872, Sullivan reported that Duggan refused to sign an order for the money deposited in the savings bank. February 26, 1872, the lodge voted that the trustees, with the sir knight, knight, treasurer, and recording scribe, be empowered to commence a suit for the recovery of the funds of the lodge, provided Judge Cowley deemed it advisable. The defendant Wheeler was requested by the committee chosen November 28, 1870, to sign an order for the withdrawal of the money in the bank, to which Wheeler replied that he would sign the order on two conditions: that the lodge should give the money to some object satisfactory to a majority of the members of the lodge, and relieve him from liability; and that he should receive a discharge from the lodge. Wheeler testified that he was ready to pay over the money whenever it should be

determined to whom it belonged. Duggan was requested to sign an order for the withdrawal of the fund from the bank, by the committee appointed November 28, 1870, and also by the committee appointed January 15, 1872, but in both instances he refused to sign it. The plaintiffs are officers and members of the lodge, as follows: William A. Snow, sir knight; John R. Nichols, knight and trustee; Daniel Sullivan, treasurer and financial scribe; Joshua C. Simmons, corresponding and recording scribe; Joseph Short, trustee; and Amede B. Tatro, an ordinary member. The whole number of the members of the lodge is 553. Cornelius Duggan has died since the commencement of this suit. There was never any vote of the lodge adopting its constitution and by-laws, but they were signed by each member at the time of his admission. The lodge, being a subordinate lodge, was never organized under any authority derived from St. 1870, *c.* 281. Some of the members of the lodge have requested Wheeler not to pay over the money in the trustees' hands to the plaintiffs.

" The following votes and doings appeared upon the records of the proceedings of the lodge : ' September 20, 1869. Complaint being made that a brother had a green hand in his employ, and that he also exposed the secrecy of the order by giving him the signs. The case was referred to a committee.'

" ' September 27, 1869. Two sir knights from Montreal were present. The English S. K. was first introduced, and he made a speech in regard to a strike existing there. The French sir knight was next introduced, who spoke in the French language upon the same subject. A motion was made that we pay a hundred dollars out of the treasury to assist the Crispins in Montreal. An amendment to that motion was made to take up a collection in the lodge also. The motion and amendment were carried.'

" January 18, 1869. By vote the lodge consented to allow Brother Mathews to take his brother-in-law in his employ to serve out the remaining five months' apprenticeship, he having already served seven months at the business in Webster, Mass.'

" ' February 8, 1869. A motion carried to raise money to be paid out of the treasury, at the rate of 25 cents tax per head on each member to be assessed, and replaced in the treasury. This

money to be sent to the National Grand Lodge for the relief of existing grievances in Milford.' [This related to the controversy with Samuel Walker in Milford, out of which sprung the suit of Samuel Walker against Michael Cronin, reported 107 Mass. 555.]

"'April 5, 1869. Chose a committee of three to investigate in regard to allowing Brother Nealy to take his nephew as an apprentice. The committee consists of Edward Dowling, Hiram Thompson and Cornelius Duggan.'

"'April 12, 1869. Committee on Brother Nealy's case reported not in favor of allowing him to take his nephew as an apprentice.'

"'August 2, 1869. Complaint being made that a person (not a crispin) named Morean, is learning new help, and states that he cares nothing for the order. Voted, to have a committee of three go and remonstrate with him, and also investigate other grievances of the like, which is said to be existing, and report to the lodge; this committee to be a standing committee for three months. Harry Eaton, Lucius M. Prouty, Wm. Clark, committee.'

"'August 9, 1869. Complaint having been made that Brother Kittredge had been learning a boy, and he having made his statement here, which not being satisfactory to the lodge, Voted, that said Brother Kittredge should desist from learning the boy. Voted, that there be a committee from each room in the big shop to see all new comers in said shop and induce them to join, and if belonging to other lodges, to join by card. Mr. Morean, who was visited by the committee last week, having stated that he would join the order, if the lodge would allow him the privilege of keeping the boy who is at work for him, and the man having lost two fingers, which would trouble him to work alone, on that account the lodge voted to allow him the privilege if he would join. Seven persons were chosen on the above committee.'

"'August 16, 1869. Voted, that all new help coming here to work, shall be obliged to get a transfer card before they can go to work.'

" 'September 6, 1869. The case of Brother Crawford was brought up. Brother Newman made report that Crawford stated that he would have no more to do with the order. Brother New man's report, as one of the committee, was accepted. Brother Snow made a motion that Crawford be suspended. The motion was carried by a unanimous vote. Motion was made that there be a committee to wait upon the Batcheller firm and state the case. Motion was carried. D. W. Wheeler, Tilley P. Snow, and H. H. Green chosen committee. Motion was made and carried that the sense of the meeting be taken whether the brothers would stop work in case the firm refuse to discharge Crawford. It was a unanimous vote that they would turn out.' "

The master gave many other extracts from the records of the lodge, which were of the same general character.

The preamble of the constitution of the lodge, which, with the by-laws, and with the constitutions of the other lodges mentioned, was annexed to the master's report, declared the object of the organization to be " to rescue our trade from the condition it has fallen into, and to raise ourselves to that respectable position in society that we, as free citizens, are entitled to, and to secure us forever against any further encroachments from manufacturers."

The case was heard by *Gray*, C. J., and reserved upon the pleadings and master's report for the consideration and determination of the full court.

*C. Cowley*, for the plaintiffs.

*P. E. Aldrich*, for the defendants.

COLT, J.* This bill is brought on behalf of a voluntary association, the individual members of which are too numerous to be joined as plaintiffs, and it is therefore brought in the name of a few, for themselves and all the other members. *Birmingham* v. *Gallagher*, 112 Mass. 190. It is heard upon the pleadings and master's report.

The individuals named as defendants were members of the association, and received its funds from the treasurer as a committee chosen to deposit the same for safe keeping in the bank, which is

---

* This case was argued in writing, and considered by all the judges.

named as a co-defendant in the bill. The money was deposited in their names, as trustees, and they now refuse to restore it to the control of the association — the defendant bank refusing to pay ·without an order signed by the trustees, but submitting itself to the decree of the court.

The only question before us is, whether upon the facts stated in the master's report, and contained in the documents referred to, the trust set forth must have been assumed by the defendants for an illegal purpose. The plaintiffs are clearly entitled to recover their own money thus detained by parties who received it in a fiduciary capacity, unless it appears that the money was delivered to them, or must be held when recovered by the plaintiffs, for a purpose immoral, illegal or contrary to public policy.

The object and purposes of the association which the plaintiffs represent are shown by the constitution and by-laws of the lodge, which are made part of the case ; these are subscribed to by each member at the time of his admission, with an additional agreement "not to teach or cause to be taught any new hand any part or parts of the boot or shoe trade without the permission of the lodge of which I am a member." Its members are wholly composed of individuals employed as workmen in the manufacture of boots and shoes, but it does not include proprietors or their foremen.

It is insisted that the agreements thus established between the members of the order are in unlawful restraint of trade, and therefore illegal, as being against public policy. But in the opinion of the court the point is not well taken. In the relations existing between labor and capital, the attempt by coöperation on the one side to increase wages by diminishing competition, or on the other to increase the profits due to capital, is within certain limits lawful and proper. It ceases to be so when unlawful coercion is employed to control the freedom of the individual in disposing of his labor or capital. It is not easy to give a definition which shall include every form of such coercion ; it is enough that in the compact before us there is no evidence of any purpose to use such unlawful means in any form.

In *Walker* v. *Cronin*, 107 Mass. 555, 564, it is said that "every one has a right to enjoy the fruits and advantages of his own enterprise, industry, skill and credit. He has no right to be protected against competition ; but he has a right to be free from malicious and wanton interference, disturbance or annoyance. If disturbance or loss come as a result of competition or the exercise of like rights by others, it is *damnum absque injuriâ*."

In *Carew* v. *Rutherford*, 106 Mass. 1, 14, it is said, "Every man has a right to determine what branch of business he will pursue, and to make his own contracts with whom he pleases and on the best terms he can." " He may refuse to deal with any man or class of men. And it is no crime for any number of persons, without an unlawful object in view, to associate themselves together and agree that they will not work for or deal with certain men or classes of men, or work under a certain price, or without certain conditions." And in *Commonwealth* v. *Hunt*, 4 Met. 111, 134, Shaw, C. J., declares that the legality of such association will depend upon the means to be used for the accomplishment of its objects and whether they be innocent or otherwise.

In the case at bar there is no evidence afforded by the documents submitted to us that the purposes of this association are unlawful by the rule stated. Unlawful coercion certainly does not appear to be intended. And the right of the members to instruct whom they choose in the mysteries of their trade cannot be denied. The case presented is not one where there is evidence to justify us in finding that the objects and purposes of the association are fraudulently and colorably declared as a cover for a secret unlawful agreement of its members. It will be time enough to deal with such a case when it arises.

In this view, it is not necessary critically to examine the instances of alleged illegal conduct which it is said are found upon the records of the association, or to inquire whether they amount to illegal restraint of that freedom in trade which the law secures to all, because specific wrongful acts cannot be shown to defeat the plaintiffs' claim, unless it be also shown that such acts come within the scope and purpose of the organization. Each act of

wrong, outside the declared and real purpose of the lodge, stands by itself, to be answered for only by those who join in its perpetration.

*Decree for the plaintiffs, with costs against the individual defendants only.*

