Dickinson v. Board of Trade.

---

John Dickinson v. Board of Trade of the City of Chicago.

Gen. No. 11,066.

1. RULE OF BOARD OF TRADE—*when enforcement of, will not be prevented.* A rule of the Board of Trade of Chicago, which prohibits its members from charging a less commission than a specified amount, is valid, where it is enacted in the interest of such board and its members and does not appear to be in itself unreasonable, where it appears that such board of trade does not itself carry on the business of buying, selling and dealing in commodities, and its enforcement by the expulsion of a violating member will not be prevented by the courts, although the courts would withhold aid in the enforcement of such a rule.

Mandamus proceeding. Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1903. Affirmed. Opinion filed June 3, 1904.

Statement by the Court.    Appellant filed a petition in the Circuit Court to compel the appellee to annul upon its corporate records an order made by the latter's board of directors expelling appellant from his membership in the

Board of Trade, and to restore to him all his rights and privileges of membership. Appellee filed its answer to the petition, to which appellant demurred. The demurrer was, after hearing, overruled. Judgment was entered against petitioner, who appeals.

The petition sets out at considerable length the history of the organization of the Board of Trade, originally an unincorporated society of persons engaged in the grain produce and commission business. It was incorporated by the General Assembly of this state February 18, 1859, and given certain powers which are enumerated in the act of incorporation. The petition states that, among other specific powers, the corporation was authorized (1) to make such rules, regulations and by-laws from time to time as it may think proper or necessary for the government of the corporation, not contrary to the laws of the land; (2) to establish such rules, regulations and by-laws for the management of its business, and the mode in which it shall be transacted, as it may think proper; (3) to admit or expel such persons as it may see fit, in manner to be prescribed by the rules, regulations and by-laws thereof; (4) to inflict fines upon any of its members and collect the same for breach of its rules, regulations or by-laws; but no fine to exceed five dollars; and that by said act said corporation is authorized, among other things, to receive and hold property and effects, real and personal, by gift, devise or purchase, and to dispose of the same by sale, lease or otherwise (said property so held not to exceed at any time the sum of two hundred thousand dollars).

It is alleged that the association has continued its business under the act aforesaid, has fixed the fee for admission to membership at the sum of $10,000, has nearly 1,800 members, and has established an exchange hall at a cost of over a million dollars, which it maintains at a large expense, and where its members transact their business. It is further stated that its growth has kept pace with the advance of the country in population and wealth; that four-fifths of the grain and provisions produced in the north-

Dickinson v. Board of Trade.

western states and territories are bought and sold in this market, and that the business done on its exchange is so vast that it fixes the market price of grain, breadstuffs and meats for the extensive territory tributary to Chicago and to a considerable extent controls the values of the necessaries of life throughout the United States and the civilized world. It is stated that the Board of Trade corporation does not itself transact the business of buying and selling, but is organized only for the purpose of affording facilities to its members in doing business with each other, and its great power and influence in dictating market values are owing to the vast aggregation of products drawn to its exchange for a market; that the great bulk of its business, though in form the private dealings of its members, is in reality the business of the numerous producers, consumers, merchants and shippers for and on behalf of whom the members deal; that because of the control which the Board of Trade has acquired through its members over the commission business in all commodities dealt in on its floor, it is impossible for any one not a member to profitably transact a commission business in such commodities in Chicago; and that as none but members can buy and sell any commodity in its exchange hall, the amount of commissions exacted by members is added to and becomes a part of the market value of such commodity to the producer and consumer, and the rate of such commissions is a matter of great public concern; that every person has the legal right to the services of members of the Board at such reasonable price or commission as may be produced by fair competition, uninfluenced by restrictions imposed thereon by the Board of Trade; and that each member of the Board has the legal right to make contracts and perform the same, and to contract for his services to the public at such price, and to employ and retain business on the exchange as his views of his own interests may dictate, uninfluenced and uncontrolled by the action of the Board.

It is stated that the Board of Trade has adopted certain rules, regulations and by-laws, contained in a printed pamphlet, attached to and made a part of the petition.

Petitioner states that he became a member of the Board in the year 1885, and has continued as such and been recognized as such up to the 6th day of February, 1901, during which time, owing to his rights of membership, he has built up an extensive business in buying and selling commodities upon the exchange of the Board, of an annual value to him of more than $50,000; and that his right of membership or membership ticket has a salable value of at least $2,200, if allowed by the Board to be transferred; but that because of his alleged expulsion as a member, such transfer is not permitted by the Board.

It is charged that some time in the year 1900 (the precise date being unknown to petitioner), the said Board professed and pretended to pass and adopt a certain rule asserted by the said Board to be in force from and after May 1, 1900, known as rule 14, section 3 of which provides that " The following rates of commission, being just and reasonable, are hereby established as the minimum charges which shall be made for the transaction of the business hereinafter specified by members of this association : For the purchase or sale and for the purchase and sale of property for immediate or future delivery, whether the contract for purchase or for sale be first made, as follows." Then follows a schedule of prices on various commodities dealt in on the Board; and the rule further provides that " Any member who, or whose firm or corporation, shall be convicted by the board of directors of a violation of the provisions of this section, or of any evasion thereof, by making rebates in prices, by rebating the government tax, by making any contract or observing any contract already made, by furnishing a membership in this exchange, by giving any bonus, gift, donation or otherwise, or by rendering any other service or concession whatsoever, shall be expelled from this association. Free telegraphic communication, however, shall not be construed as a violation or evasion of this rule."

The petitioner alleges that January 10, 1901, he was notified by the secretary of the Board through the mail

that a charge had been made against him that he had violated section 3 of rule 14 above referred to, and that the Board would examine into the matter January 15, following; that he appeared before the Board and denied that he had been guilty of any act authorizing the Board to expel him, or violated any proper or valid rule of said Board; but that certain proceedings were nevertheless had, the nature of which petitioner has been unable to ascertain, and February 6, 1901, he received a notification from the secretary of the Board that he had been found guilty and expelled from the Board of Trade of the city of Chicago, and he has since been deprived of all rights and privileges as a member. Petitioner states that he has made demand for copies of all complaints, evidence, reports of committees, findings, decisions and records in any manner connected with the charges against him, but without avail, compliance with all such demands having been refused, and the Board declines and refuses to reinstate him, whereby, if the action of the Board is allowed to stand, he is deprived of all his rights and privileges as a member, his business and its value in dealing on the exchange of the Board is wholly destroyed and the value of his membership lost to him. Petitioner charges that the action of the Board in expelling him is beyond the legal power, authority or jurisdiction of the Board of Trade, is without warrant of law, wholly void and of no effect; *first*, because section 3 of rule 14 is contrary to the laws of the land, is not authorized by its charter or act of incorporation and is not germane to the purposes and objects of said corporation; *second*, because said section 3 is contrary to public policy of this state, in that it imposes undue burdens upon commerce, destroys competition in trade, and unlawfully restrains the action of individual members of said Board in the transaction of their business; *third*, because the enforcement of said section 3 operates unlawfully to increase prices to consumers, and unreasonably interferes with the just rights of petitioner as well as of other members of the Board in the management and conduct of their business, in which they

are competing with one another, which they are willing to conduct for a less price, thereby reducing the price of such commodities to the consumer and the charges to the producer. Petitioner therefore prays for a writ of peremptory mandamus directed to the Board of Trade, commanding it to vacate, annul and set aside its order of February 5, 1901, whereby it was attempted to expel petitioner, and to reinstate him in his membership.

Appellee filed its answer, in which, among other things, it denies that the business done on its exchange fixes the price of grain, breadstuffs and meats for the territory tributary to Chicago, or controls the values of the necessaries of life throughout the United States and civilized world, but avers that said prices are made and fixed by, and in reference to the law of supply and demand, which neither respondent nor any other exchange can materially affect or control, and denies that it is impossible for any one not a member of respondent to transact a commission business in any such commodities in the city of Chicago; that the rates of commissions charged by the members of respondent is a matter of public concern; that any member of the public has legal right to the services of the members of the respondent for the buying or selling of commodities on said exchange at reasonable prices; and avers that, on the contrary, said exchange hall of respondent is not a public market, and that no one has a legal right to make a sale or purchase thereon, or to compel a member of respondent to act for him in making a transaction thereon, but that it is the legal right of every member of respondent to decline to make any transaction on said exchange for any such person; and denies that petitioner or any other of its members has any legal right to conduct business on said exchange, otherwise than under and in compliance with respondent's rules, regulations and by-laws.

Respondent further says that prior to the date of petitioner's admission to membership in the Board of Trade a rule was in force fixing minimum rates of charges for the purchase and sale of the commodities therein named; that

when petitioner became a member of respondent as aforesaid, and on the 22nd day of December, 1884, he subscribed, as each and every member of respondent has upon becoming a member, to the following agreement:

"We, the undersigned, members of the Board of Trade of the city of Chicago, do, by our respective signatures and by virtue of our membership in said corporation, hereby mutually agree and covenant with each other and with the said corporation, that we will in our actions and dealings with each other and with the said corporation, be in all respects governed by and respect the rules, regulations and by-laws of the said corporation, as they now exist, or as they may be hereafter modified, altered or amended."

And that said agreement, so signed by petitioner and the other members of respondent, was in full force and effect at the time said petitioner was expelled from respondent as aforesaid.   Respondent admits that it adopted about the 1st of May, 1900, as one of its rules, section 3 of rule 14 set out in said petition, the petitioner, as respondent is informed and believes, voting for its adoption, and avers that said rule and the rates of commission therein provided are just and reasonable, and that any lower rates than are therein specified would be unreasonable and inadequate compensation for the services in said rule specified; and that the reason actuating respondent and its members in adopting said rule and its predecessors was two-fold:   First. To strengthen and render effective the disciplinary power of respondent.   The only way of enforcing compliance on the part of respondent's members with its rules and regulations—many of which are enacted for the purpose of maintaining among respondent's members a degree of business integrity and commercial honor—is by means of the power possessed by respondent under its charter to suspend or expel its members for infraction of its rules.   Second.   The maintenance of fair and reasonable rates of commission or profits for doing business upon the exchange of respondent is necessary to enable respondent to collect from its members the yearly assessments necessary to raise the large revenue needed by it to maintain said exchange and manage its affairs.   If reason-

able rates are not fixed and enforced by respondent it would cease to be profitable to many of its members to conduct business on such exchange, and in that event many of its members would probably abandon their memberships and thereby the revenue of respondent would be much reduced; that the previous rule of like character of respondent as above shown, was defective in that it did not provide for the expulsion of violators thereof; whereby some members, unmindful of their agreements to abide by said rules, violated said commission rule by soliciting and doing business at lower rates than are therein specified, and lower than were remunerative when business was honestly transacted; and by reason thereof the number of applications by persons desiring to become members became very much lessened, and the opportunities of members to transfer their memberships to incoming members was very much decreased, and thereby the amount for which memberships could be sold to incoming members declined from the sum of $4,700, at which they were selling at one time, to less than $750, at about which figure the value of memberships stood prior to the inauguration of- steps for the adoption of the rule fixing commissions, set out in said petition. The result of this was that the disciplinary power of respondent was thereby very much weakened and this respondent and its members found it necessary to adopt, and put in force, said rule fixing the rates of commissions, set out in said petition, and thereupon and by reason thereof the value of memberships steadily improved, and at the present time they are selling at from $4,000 to $4,300. This respondent further says that said rule was not adopted with any other end or purpose, nor with the intention of improperly or unreasonably imposing any restraint upon its members, or upon the business done by its members on the floor of its exchange.

A. B. JENKS and JOHN MAYO PALMER, for appellant.

HENRY S. ROBBINS, for appellee.

Dickinson v. Board of Trade.

Mr. Presiding Justice Freeman delivered the opinion of the court.

The grounds upon which appellant relies for reversal of the judgment against him in this case are, first, that section 3 of rule 14 of the rules and by-laws of the Board of Trade is contrary to the law of the land, not authorized by the charter nor germane to the purposes and objects of the corporation, in that it tends to control the necessaries of life and services, and to create a monopoly, and that it is therefore invalid; second, that the proceedings to expel appellant, as shown by the corporate records, were without due notice and not in accordance with the rules and by-laws. Hence it is claimed petitioner's expulsion for alleged violation of said rule 3 was an act beyond the legal power of the directors of the Board of Trade, and that mandamus is an appropriate remedy to set aside the order of expulsion and to reinstate appellant.

It is urged in behalf of appellant that any combination restraining freedom of trade so as to increase the price of commodities or services and prevent competition in fixing prices, is illegal and contrary to public policy, and that rule 3 comes within this legal prohibition. That rule as above stated prohibits, on pain of expulsion, any member of the Board of Trade of Chicago from charging less than a fixed minimum rate of commission to non-members of the Board for the purchase or sale of grain in specified quantities. Appellant contends that the rule does necessarily restrain freedom of trade and increase the price of commodities to the general public. The Board is by its charter authorized to make such rules, regulations and by laws as it may deem proper, " not contrary to the laws of the land." It does not itself carry on the business of buying and selling nor of dealing in commodities. Its objects are stated in its charter to be *inter alia* " generally to secure to its members the benefits of co-operation in the furtherance of their legitimate pursuits." It maintains a commercial exchange where its members carry on their business, and furnishes them facilities for so doing to such an extent that one not a

member cannot, as it seems to be conceded, profitably engage in buying and selling in Chicago the commodities in which its members deal. Expulsion from membership therefore involves serious consequences to the member expelled, and inability to become a member precludes one seeking to engage in the lines of business carried on upon the Board from profitably so doing, and in a sense gives to its membership a monopoly. If the rule complained of is "contrary to the law of the land," then it is in violation of the Board's express charter powers.

In More v. Bennett, 140 Ill. 69–76, the parties were members of a voluntary association not incorporated. One of its members sued to recover damages caused by an alleged breach on the part of another member, of a rule of the association forbidding the members to do stenographic work at less than fixed rates in competition with each other. The by-laws provided for trial and punishment of members violating the rules. The rule referred to was held to be obnoxious to well-settled rules of public policy in so far "as to render it improper for the courts to lend their aid for its enforcement;" its object being "to stifle or prevent competition and thereby to enhance or diminish prices to a point above or below what they would have been if left to the influence of unrestricted competition." A rule may, however, be contrary to public policy and not so far "contrary to the law of the land" as to be unenforcible upon its own members by the voluntary association by which it is enacted. When it is sought to invoke the aid of the courts for the enforcement of such rule the aid will be withheld, but on the other hand the courts will not necessarily interfere with its enforcement by and among those who have voluntarily adopted the rule for their own guidance or convenience, and by an association whose members have been admitted upon condition of obedience to rules and regulations of their own creation.

When appellee was incorporated it was provided in section 6 of the act, that the corporation should "have the right to admit or expel such persons as they may see fit in

manner to be prescribed by the rules, regulations and by-laws." It is appellant's contention, not that appellee cannot expel a member in pursuance of a valid by-law, but that in this case the expulsion was in pursuance of a by-law which he contends has no force whatever, because contrary to public policy. In Stock Exchange v. Board of Trade, 127 Ill. 153, the nature, constitution and growth of the influence and power of the Board of Trade and its relations to its members and others are considered. It is there held that while it is a private corporation, yet that where, by conduct of its affairs through a long term of years its system of market reports has become impressed with a public interest, it cannot be allowed to discriminate between persons whom it has been serving, and so create monopolies and dictate who shall deal in agricultural products, enriching some and impoverishing others at will. It was held error, therefore, to dismiss the bill of complaint. The People v. Live Stock Exchange, 170 Ill. 556, was an information in the nature of a *quo warranto* questioning a by-law of the exchange, claimed to be an abuse of its corporate franchise. It was held that leave to file the information should be granted, the by-law in controversy constituting a restriction on freedom of trade and business and hence an abuse of the corporate franchise of the exchange. The questions decided in these two cases are very different from that now before us. It may be that upon *quo warranto* the by-law here under consideration might be questioned and the court would then determine its propriety and lawfulness. In the case at bar, however, it is sought to compel the Board to reinstate a member expelled for violating the by-law. The answer of appellee sets forth the reasons which led to its adoption. It is not claimed that the minimum rate of commission fixed in the by-law is unreasonable in itself, and it appears from the answer which is demurred to, that its enforcement is in the interest of the Board and of the members themselves. The Board is a private corporation and its business is not *juris publici.* Live Stock Co. v. Chicago Live Stock Exchange, 143 Ill. 210–237. It furnishes a

place for its members to do business and facilities therefor, and in return for that privilege requires them not to charge less than a minimum reasonable commission on commodities they deal in with its aid. In this it violates no statute of the state. In Carew v. Rutherford, 106 Mass. 1, it is held not a crime for a number of persons without an unlawful object to associate themselves and agree not to work for less than a certain price. The by-law does not interfere with the freedom of those not members. It is confined in its operation to those who have voluntarily agreed to be bound by it. It has been repeatedly held that cooperation and combination by workmen to maintain or increase wages are legitimate and sanctioned by law. Curran v. Galen, 152 N. Y. 33–36; Snow v. Wheeler, 113 Mass. 179. In Master Stevedores' Ass'n v. Walsh, 2 Daly, 1, a by-law to this end limited to the members of the corporation is held not in restraint of trade. The minimum price fixed in the by-law here in controversy is not unreasonable. We conclude that its enforcement infringes no rule of law or public policy, confined as it is to the members of the Board, upon whom alone it operates, and by whom it has been enacted for their own government.

In Board of Trade v. Nelson, 162 Ill. 431, 438, it is said that "the courts will never interfere to control the enforcement of by-laws of such an association, but they will be left to enforce their rules and regulations by such means as they may adopt for their government," and attention is called to the fact that the court has repeatedly refused to interfere with the disciplinary powers of the Board in equity as well as law. In People ex rel. Rice v. Board of Trade, 80 Ill. 134–137, it is said that where a member of a corporation created for the gain of its stockholders is deprived of a charter right, a court may by mandamus compel the body to admit him to the exercise of such right; but that "courts never interfere to control the enforcement of the by-laws of merely voluntary associations;" that such organizations "must be left to enforce their rules and regulations by such means as they may

adopt for their government." It is held in that case that the Board of Trade of Chicago, appellee herein, is a voluntary organization empowered by its charter "to govern in such mode as it may deem most advisable and proper."

In Ryan v. Cudahy, 157 Ill. 108, reference is had to the case last referred to, and it is said that expressions in that opinion to the effect "that a court would not interfere in any case with the action of an organization like the Board of Trade," are not to be regarded as authority, although the case properly held that one expelled after a full opportunity to make defense could not be restored by mandamus. While disclaiming any intention of interfering with the disciplinary power of the Board over its members, it is held in the Ryan v. Cudahy case (p. 119), that where property rights are involved between members of the Board the courts have the power to so far supervise the action of the board's tribunal as to determine whether it has proceeded according to the rules and regulations provided for its action, "and if they have failed in a substantial manner, correct abuses which may result from their unwarranted procedure."

We find no evidence that the Board has not proceeded in the present case in accordance with its rules and regulations. It appears that the consideration of the · charges was postponed from the date originally set and the case was finally disposed of on the day to which postponement was had. In this, so far as we are advised, no irregularity appears.

Finding no warrant for interference with the action of the Board complained of, the judgment of the Circuit Court must be affirmed.

*Affirmed.*

Mr. Justice BAKER took no part.