Daniel E. Champion et al. v. John J. Hannahan et al. Gen. No. 13,609.

1. JURISDICTION—*when question of, cannot be raised in injunctional proceeding.* When defendants to a bill appear in a cause and file a plea to the bill and move to dismiss or dissolve a preliminary injunction issued on the bill, they submit themselves to the jurisdiction of the court and are not in a position thereafter to question the jurisdiction of the court over them.

2. EQUITY—*when has jurisdiction over affairs of fraternal benefit society.* Equity has jurisdiction to determine the propriety of an amendment increasing the amount and the manner and method of payment of dues.

3. FRATERNAL BENEFIT SOCIETY—*when amendment of constitution increasing dues valid.* Held, that an amendment of the constitution and by-laws of a fraternal benefit society increasing the amount and manner of payment of dues is binding upon the membership in view

of its previous agreement to abide by amendments made in manner prescribed, and that such amendment was not unreasonable and that the same was therefore valid.

4. FRATERNAL BENEFIT SOCIETY—*when agreement not binding upon.* An agreement made by the grand master of a fraternal benefit organization by which he in effect undertakes to abrogate temporarily the constitution of such society, is not binding upon the society in the absence of an unqualified approval.

5. FRATERNAL BENEFIT SOCIETY—*when provision of constitution valid.* A provision in the constitution of a fraternal benefit society which provides that a member failing to pay his assessments shall stand expelled *ipso facto* and without notice, is not unreasonable.

6. INJUNCTION—*when mandatory, will not be granted.* A mandatory injunction requiring a fraternal benefit society to restore to membership a member expelled will not be awarded.

Bill for injunction, etc. Appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1907. Affirmed. Opinion filed January 14, 1908.

**Statement by the Court.** This is an appeal from a decree of the Superior Court of Cook county dismissing, for want of equity and for lack of jurisdiction, the bill of complaint filed by appellants and other members of the Brotherhood of Locomotive Firemen. The original bill was filed by 108 members of Paul Revere Lodge, No. 485, of the Brotherhood of Locomotive Firemen, and by fifty-seven members of Green Mountain Lodge, No. 301, of the Brotherhood of Locomotive Firemen. Subsequently, by order of court, 223 other members of the brotherhood became parties cocomplainant.

Of these, all except the three appellants and one other before the decree was entered by the court below settled with the order on the terms offered by the grand master and the other officers, and decided not to proceed further with the suit for an injunction, and as to all of these the decree dismisses the bill by consent and on motion of solicitors for complainants.

Briefly stated, the allegations of the bill are as follows:

The Brotherhood of Locomotive Firemen is a volun-

tary organization organized and in existence since 1873; that its object is to promote the social, moral and intellectual standing of its members and to protect the material interests of the members of said organization, and that the same is maintained for the purpose of assisting its members in treating with their employers in reference to the hours, wages and conditions surrounding the members during their employment, and to provide sick benefits and insurance for its members.

The bill further alleges that on account of the influence and size of the said organization it has become a practical necessity for persons engaged in the business of locomotive firemen to belong to said organization; that said organization has accumulated assets of property of over half a million dollars; that the complainants were members of the Beneficiary Department of the Brotherhood of Locomotive Firemen, which was created for the purpose of providing substantial relief for members who are disabled or incapacitated to perform manual labor, and for the purpose of providing death benefits to be paid to the wife, child or children, mother, father, blood relations and dependent ones, upon the death of the member; that to provide funds for the payment of said benefits, complainants, in common with other beneficiary members of said association, have been assessed certain amounts by the proper officers of the organization and have received certificates entitling the beneficiaries named therein to participate in the fund accumulated on account of such assessments in the event of the death of the member while in good standing holding the benefit certificate; that a large fund has accumulated in the Beneficiary Department, aggregating over $160,000.

It is further alleged in the bill that the Brotherhood of Locomotive Firemen is divided into 700 different lodges, with principal places of meeting scattered throughout the United States and Canada; that the said organization, while a voluntary organization,

has a constitution providing for its government by what is known as a Grand Lodge of the Brotherhood of Locomotive Firemen, consisting of the grand master, first, second, third and fourth vice-grand masters, grand secretary and treasurer, editor and manager of the magazine, general counsel, grand medical examiner; a grand executive board, consisting of five members; a board of grand trustees, consisting of three members and duly elected delegates, one representing each subordinate lodge.

Complainants allege that the grand lodge consists of over 700 persons, their residences being scattered through the various states and territories of the United States and Canada; that the names of many of the members of the Grand Lodge of the Brotherhood of Locomotive Firemen were unknown to complainants, but that the names of such of the members of the grand lodge as are known to complainants are given, and said persons are joined as parties defendant as representing themselves and all other members of said grand lodge.

It is further alleged in the bill of complaint that the Grand Lodge of the Brotherhood of Locomotive Firemen meets in convention biennially on the second Monday of September, and rules and regulations for the government of the organization are adopted at said biennial convention; that the last biennial convention of said grand lodge was held in Milwaukee, Wisconsin, on the second Monday of September, 1906, the same having adjourned on the twentieth day of September, 1906, and that no further biennial convention would be held by the said order until the year 1908, unless a special convention should be called upon petition of at least 100 subordinate lodges.

Complainants further allege that prior to the biennial convention of the said association held in the year 1904 there was in existence a constitution of the order containing the following provisions:

"A candidate for admission shall at the time of

applying for membership make application for a bene-
ficiary certificate in substance as follows:

"I, ....................................................................., desiring to
make application for membership in ...................................
Lodge No. ......... of the Brotherhood of Locomotive
Firemen, hereby agree to comply with the laws, usages
and regulations of the Order now in force or that may
be hereafter enacted as the condition upon which I am
to be entitled to participate in the Beneficiary Depart-
ment to the amount of $.................. and receive the other
rights, privileges and benefits of the Order.   *   *   *

Applicant.

"Section 81.   Constitution—How Amended.

"The Constitution of the Grand Lodge and subordi-
nate lodges may be altered, amended or repealed at a
meeting of the Grand Lodge in the following manner:
Any lodge may, through its Secretary, submit such
amendments or alterations as may be deemed for the
best interests of the Brotherhood.   Said alterations or
amendments shall have the seal of the Lodge attached
thereto.   Grand Lodge officers shall have the right to
submit such alterations or amendments as they may
deem advisable.

"The proposed change shall quote in full the sec-
tion to be changed incorporating the alteration or
amendment so to be made, which shall be filed in the
Grand Lodge not less than sixty days prior to the
meeting of the next biennial convention, and the Grand
Secretary and Treasurer shall have all such alterations
or amendments printed, and all subjects pertaining to
one section grouped together, and a copy forwarded
to each subordinate lodge and also referred to the
Committee on Constitution and By-Laws at least thirty
days prior to the convening of the convention.   The
committee shall consider the alterations or amend-
ments and, if approved, shall report the same back
to the meeting with such recommendations as may be
deemed necessary, making a report for each section or
subject for which there has been an amendment offered.
If such report is adopted by a two-thirds vote, it shall
constitute a part of the Constitution of the Brother-
hood to take effect on the first day of January follow-
ing, unless otherwise ordered by the convention.

"The Grand Executive Board shall convene as a committee on Constitution and By-Laws, in the city where the convention is to be held, at least five days previous to the meeting of any convention, for the consideration of said amendments.

"Section 170. The grand dues of each member shall be in the sum of Two Dollars per year, one dollar of which shall be in payment of the Locomotive Firemen's Magazine, and in consideration of which the member shall have his name duly entered upon the subscription list and be entitled to receive a copy of such magazine for a period of one year. Such amount shall be payable on or before the first day of July to the Collector of the Lodge. Any member failing to pay his grand dues as required in this section shall stand expelled, such expulsion to take effect July 2 and record thereof made and reported to the Grand Secretary and Treasurer. The amount so collected shall be paid to the Treasurer of the Lodge and he shall forward the same so as to reach the Grand Secretary and Treasurer not later than the 20th day of the same month."

That at the said convention held in September, 1904, said last quoted section of the constitution was amended to read as follows:

"The grand dues of each member shall be the sum of Two dollars and fifty cents per year, payable semi-annually, one dollar of which shall be in payment of Locomotive Firemen's Magazine, and in consideration of which the member shall have his name duly entered upon the subscription list and be entitled to receive a copy of each magazine from the day of initiation to end of fiscal year. Such amount shall be payable in two equal installments on or before the first days of January and July, to the Collector of the Lodge. Any member failing to pay his grand dues as required in this section shall stand expelled, the said expulsion to take effect January 2 and July 2, and a record thereof made and reported to the Grand Secretary and Treasurer. The amount so collected shall be paid to the Treasurer of the Lodge and he shall forward the same so as to reach the Grand Secretary and Treasurer not later than the 20th day of the same month."

Complainants further allege that each of them, prior to September 1, 1904, had paid to the Brotherhood of Locomotive Firemen the grand dues for the year from July 1, 1904, to July 1, 1905, as provided in said section 170, prior to the amendment of September, 1904, and a receipt had been issued to each of complainants specifying the payment of grand dues from July 1, 1904, to July 1, 1905, and that the sum so paid has been forwarded by the treasurers of the subordinate lodges to which complainants belonged to the grand secretary and treasurer of the organization, and that the same had been received with the full knowledge and consent of the other members of the organization.

That after the amendment passed in the year 1904, complainants, who are members of Paul Revere Lodge, No. 485, contended that the payment of the semi-annual grand dues under the said amendment should not begin until July 1, 1905, but that appellees Hannahan and Carter, who then were and still are the grand master and grand secretary and treasurer of the Brotherhood of Locomotive Firemen, contended that under the amendment passed in September, 1904, appellants were obligated to pay $1.25 each for the semi-annual grand dues for the period from January 1, 1905, to July 1, 1905, but that appellants, in order to avoid controversy with the officers of the grand lodge, offered to pay and did pay, in addition to the sum of two dollars already paid for the grand dues for the fiscal year from July 1, 1904, to July 1, 1905, the sum of twenty-five cents each, additional semi-annual grand dues to those paid by appellants prior to July 1, 1904, and that thereupon Paul Revere Lodge, No. 485, of which appellants were members, entered into a certain agreement with the Brotherhood of Locomotive Firemen through the said John J. Hannahan, its grand master, which agreement was made January 19, 1905, and recites the change in the constitution as above set forth. It also recites that the by-laws of the organization provide that all amendments to the constitution shall be-

come effective on January 1st next after their adoption, and recites the sending out of notice by the grand master and grand secretary and treasurer to each of the complainants, demanding payment of $1.25 dues for the period from January 1, 1905, to July 1, 1905.

It further recites the contentions of the respective parties above set forth, and that it is agreed as follows:

"1.    That the said tender of 25 cents for each member shall be accepted by the officers of the Grand Lodge;

"2.    That the receipt of the same shall not prejudice the claim of right of the grand officers to insist on further payment of $1 from each member, nor shall their said claim be in any way prejudiced or waived by the reception of subsequent grand dues until 90 days after next Grand Lodge convention.

"3.    It is further agreed that no action shall be taken looking to the suspension of the parties of the second part or of any of its members on account of their refusal to pay said excess assessment until after the next convention of the Grand Lodge, and not thereafter until at least 40 days' notice in writing has been given to the second party of intention to enforce payment in cash of the said part of said assessment of said grand dues on which the party of the second part claims a credit of $1 per member as aforesaid."

It was further recited in said agreement that the intention thereof was that the question of the grand dues should stand in abeyance until the grand master should receive further instructions from the grand lodge at its next convention, and that no proceedings which might then be ordered to be taken requiring the further payment in cash by the subordinate lodge or its members should be "commenced within 90 days after such Grand Lodge convention and not thereafter, and that the party of the second part and its members shall then have the same right to insist on the allowance of said credit aforesaid that it and they now have, it being the intention hereof that the rights and claims of neither party shall be prejudiced by this agreement and the holding of the said controversy in abeyance."

The agreement was signed by the Brotherhood of Locomotive Firemen through its grand master, and by the Paul Revere Lodge through its treasurer and by a committee.

The bill of complaint further alleges that after entering into the said agreement the question of payment of the additional sum on account of grand dues was held in abeyance until after the biennial convention held in Milwaukee, Wisconsin, in September, 1906; that at the said convention, upon a report of the committee to whom the controversy between appellants and the Brotherhood of Locomotive Firemen had been submitted, the action of the said Hannahan, grand master, in entering into the contract with Paul Revere Lodge, No. 485, was approved by the convention and the committee reported that the ruling of the grand master in reference to the collection of $1.25 on account of semi-annual dues for the period beginning January 1, 1905, was correct, and said grand master was instructed to deal with said subordinate lodges as the laws of the order provide for lodges failing to pay their dues and assessments; that on the twelfth of November, 1906, the said grand master notified the lodge of which appellants were members that the grand dues for the period ending June 30, 1905, would have to be paid by December 1, 1906, or that the penalty prescribed by said proceedings would be enforced, and that the said Hannahan, grand master, on or about December 1, 1906, notified appellants, in common with other members of said lodge No. 485 that they stood expelled for failure to pay the additional $1 grand dues for the first half of the year 1905.

Complainants further allege that they are ready and willing and offer to pay to the Brotherhood of Locomotive Firemen any amounts on account of grand dues for the said period which the court might adjudge to be due and owing from them to the Brotherhood of Locomotive Firemen.

Complainants further allege that Hannahan, the

grand master, and John F. McNamee, the editor and manager of the magazine, are about to publish a certain magazine, known as the "Brotherhood of Locomotive Firemen's Magazine"; that it is their custom to publish in said magazine a list of the members expelled from said organization; that the publication of the names of complainants as expelled from the order would irreparably injure appellants, in that it would prevent appellants from procuring employment in the lines of employment in which they were especially skilled and would render it exceedingly difficult, if not impossible, for appellants to secure employment in that line, and that in the event of appellants becoming disabled, or in the event of the death of appellants, claim would be made by the Brotherhood of Locomotive Firemen that the suspension of appellants had resulted in a forfeiture of their beneficiary rights under the benefit certificates issued to them.

The bill of complaint prays that the said parties who are made defendants in their own behalf and as representing the other members of the Brotherhood of Locomotive Firemen may be required to answer; that an injunction may be granted restraining the defendants from publishing in the official organ of the Brotherhood of Locomotive Firemen the names of appellants, or of the lodges to which appellants belong, as expelled or suspended from the Brotherhood of Locomotive Firemen, and from publishing in any manner whatsoever any statement to the effect that appellants are no longer members of the Brotherhood of Locomotive Firemen, and from expunging from the membership list the names of appellants as members, or from depriving or attempting to deprive appellants from any of the benefits or privileges of membership in the Brotherhood of Locomotive Firemen, or from entering upon the records of the Brotherhood of Locomotive Firemen any memorandum of expulsion of appellants, or from cancelling or attempting to cancel the benefit certificates held by appellants in said organiza-

tion, or from doing any other act or thing which might tend to deprive appellants of any and all the advantages of membership in the Brotherhood of Locomotive Firemen.

The bill prays for a temporary injunction in accordance with the prayer for a permanent injunction.

The bill of complaint was filed on December 17, 1906, and was duly verified.

Subsequently, on December 18, 1906, on motion of complainants, it appearing that notice had been given by complainants to certain of the defendants, a preliminary injunction was issued restraining the defendants as prayed in the bill of complaint.

Afterwards, on December 21, 1906, an order was entered permitting 223 additional complainants to become parties without prejudice to any proceeding theretofore had.

On December 29, 1906, appellees Hannahan and Carter filed a plea to the bill, alleging that they are residents of the city of Peoria; that the first, second, third and fourth vice-grand masters were residents of other states, giving their residences; that John H. Smith, named as general counsel in the bill of complaint, was not general counsel; that John H. Murphy, residing in the State of Colorado, was general counsel of said Brotherhood; that the editor and manager of the magazine resided in Indiana, and that appellees George Goding and Robert Dixon resided in Cook county, Illinois, and are the only defendants named in the bill of complaint residing in Cook county.

Said plea further alleged that Goding and Dixon were not proper or necessary parties to the bill of complaint, having no power or authority to do and not having threatened to do any of the several acts enjoined by the injunction; that the bill of complaint does not affect real estate in Cook county; and that they ought not to be required to answer the bill of complaint.

Goding and Dixon on the same day filed a general demurrer to the bill.

On January 25, 1907, a decree was entered reciting that by agreement between defendants John J. Hannahan as grand master and W. S. Carter as grand secretary and treasurer, payment had been accepted from 348 of the complainants in the said bill of complaint of the additional sum so claimed by the defendant, and agreeing that said complainants should be reinstated as of December 4, 1906, and that certain other parties might become co-complainants and make the said payment and be reinstated in accordance with said agreement, leaving appellants and one James A. Bacon as the only complainants not settling the controversy with the Grand Lodge of the Brotherhood of Locomotive Firemen.

The decree further recites that the case coming on for argument upon motion of defendants Hannahan and Carter, grand master and grand secretary and treasurer, respectively, to dissolve the injunction theretofore granted herein, and the court being fully advised in the premises, ordered the injunction to be and the same was dissolved and the bill of complaint was dismissed for want of equity and for want of jurisdiction as against the complainants, who are appellants herein.

RITSHER, MONTGOMERY, HART and ABBOTT, for appellants.

O'DONNELL, DILLON & TOOLEN, for appellees.

MR. JUSTICE SMITH delivered the opinion of the court.

It is insisted on behalf of appellees that the bill in this case was improperly filed in Cook county, because no one necessarily or properly named as defendant resided or was served in Cook county. The decree dismisses the bill for want of jurisdiction, as well as for want of equity.

When defendants to a bill appear in a cause and

file a plea to the bill and move to dismiss or dissolve the preliminary injunction, as did Hannahan and Carter, appellees, they submit themselves to the jurisdiction of the court and are not in a position thereafter to question the jurisdiction of the court over them. Appellees Goding and Dixon appeared in the cause and demurred to the bill, and moved the court to dissolve the preliminary injunction. The appearances of appellees were not limited in any way or for any purpose. In our opinion the Superior Court had jurisdiction of the parties.

It must be held also, on the authority of Heaton v. Hall, 51 App. Div. Rep. (N. Y.) 126; Rowell v. Covenant Life Ass'n, 84 Ill. App. 316; Ryan v. Cudahy, 157 Ill. 108; Fullenwider v. Royal League, 180 id. 621; and Dickenson v. Board of Trade, 114 Ill. App. 295, that a court of equity has jurisdiction of the subject-matter of the bill.

It appears from the decree that the bill was dismissed upon the hearing of the motions of appellees to dissolve the preliminary injunction. While it appears that the sworn plea of appellees Hannahan and Carter was read on the hearing, and the affidavits of Goding and Dixon and O'Donnel were also read, the motion must be treated, no answer having been filed, as based on the insufficiency of the bill for the relief asked, and therefore as amounting to a demurrer to the bill, thus presenting the question whether the complainants state a case in their bill for equitable relief.

The bill makes no question upon the regularity of the proceedings whereby the amendment to the constitution set out in the bill was adopted. The question presented by the bill was to the right of the convention of the Brotherhood of Locomotive Firemen held in September, 1904, to change the constitution of the order, whereby the grand dues of each member were fixed at $2.50 per year, instead of $2, and providing for its payment in two equal installments on the first days of January and July in each year, and the right

to enforce such amendment against complainants on January 1, 1905, complainants having paid on July 1, 1904, their dues to July 1, 1905, under the provisions of the constitution as it existed before the amendment was adopted.

The time when the amendment went into effect was fixed by section 81 of the constitution, in the absence of any action of the convention fixing a different date.

Appellants, when they joined the order, agreed in their applications "to comply with all the laws, usages and regulations of the Order now (then) in force or that may be hereafter enacted." They therefore agreed to and were bound by the above provision of the constitution that amendments might be made in the way therein provided, and that such amendments should take effect on the first day of January following, unless otherwise ordered by the convention.

A court of equity cannot say that the amendment was unreasonable, nor can the court say that it would work any hardship upon appellants because they had paid their dues in advance of the going into effect of the amendment. With a membership as large as that averred in the bill, it would necessarily happen that very many of the members would have paid dues in advance of any change of the constitution. Indeed, most of the members of the order, if not all of them, if they paid their annual dues on the first day of July in each year, under section 170 of the constitution before it was amended, must have been in the same situation as appellants, as to the advanced payment of their dues from January 1, 1905, to July 1, 1905; so that the amendment must have affected equally all members, and if appellants are right in their contention that they could not be called upon for the increased assessment of dues until July 1, 1905, it would be impossible to put the amendment in force until that date, although the constitution provided it should be in force January 1, 1905.

In our opinion, every member of the order paid his

annual dues subject to the provision of the constitution in regard to amendments thereof, and if such amendment went into force and effect on January 1st, as we think the amendment in question did, each member was bound to pay his dues from January 1st in accordance with the new provision.

When a member of a voluntary association agrees when joining to be bound by all laws of the association then in force, or which may thereafter be enacted, he is bound by any change in the laws, even though such change may vary the terms of his contract with the association as to the rate of his assessments or otherwise. He has no vested right to have the rate of assessment fixed by the law of the association, when the contract was entered into, remain unchanged. Fullenwider v. Royal League, 180 Ill. 621; Peterson v. Gibson, 191 *id.* 365; Scow v. Royal League, 223 *id.* 32; Murphy v. Nowak, 223 *id.* 301.

The bill shows that the biennial convention of the order held in 1906 approved the construction of the amendment of 1904, placed thereon by the grand master, and directed the executive officers to carry the amendment, as interpreted by him and the convention, into effect. No doubt, as contended by both sides to this controversy, under section 173 of the constitution of the order, appellants, having failed to pay their dues to a subordinate lodge or to the grand lodge, as provided by the constitution, stood, *ipso facto,* upon such failure, expelled from the order, and no action of the lodge or of any officer was required to give effect to such expulsion. This was the situation and standing of appellants and each of them when the agreement of January 19, 1905, signed by the grand master of the order and the treasurer and committee of the Paul Revere Lodge was made. It is necessary, then, to consider the effect, if any, of this agreement upon appellants' rights.

By this contract it was agreed that the Paul Revere Lodge should be permitted to pay twenty-five cents in

cash for each of the members of that lodge who, on July 1, 1904, paid the grand dues assessment then made for the year ending July 1, 1905, but without prejudice to either party, and the claim of right of the grand officers to insist on a further payment of one dollar for each member should not be waived or prejudiced by the reception of subsequent grand dues until ninety days after the next grand lodge convention. The agreement also provided that no action should be taken by the grand lodge or its officers, agents or lodges looking to the suspension of Revere Lodge or its members on account of their refusal to pay the grand dues withheld until after the next convention of the grand lodge, and until after forty days' notice in writing had been given to the Revere Lodge of the intention to enforce payment in cash of the part of the assessment of said grand dues on which that lodge and its members claimed a credit of one dollar per member.

The bill shows that at the biennial convention of the grand lodge held in Milwaukee in September, 1906, the action of the grand master in entering into the above agreement was approved, and that the ruling of the grand master in reference to the collection of $1.25 on account of semi-annual dues for the period beginning January 1, 1905, was correct, and the grand master was instructed to deal with the said subordinate lodges as the laws of the order provided for lodges failing to pay their dues and assessments. The bill avers that on November 12, 1906, the grand master notified the lodge of which appellants were members that the grand dues for the period ending June 30, 1905, would have to be paid by December 1, 1906, or that the penalty would be enforced; and that on or about December 1, 1906, the grand master notified appellants that they stood expelled for failure to pay the additional one dollar on grand dues for the first half of the year 1905.

Waiving for the moment the question whether the

agreement was binding upon the Brotherhood, and assuming that it was binding on the parties to it, the claim of appellants is that they were entitled to forty days' notice after the convention before any further action to enforce the expulsion could be taken against them, and that they did not receive such notice.

The contract provides that the notice should be given to the Paul Revere Lodge, the second party to the contract. The lodge was represented in the convention by its delegates under the constitution. The resolutions passed at the convention were notice to the delegates, and, through them, to the lodges which they represented, of what those resolutions declared or provided. As appears by the bill, the Paul Revere Lodge had notice on or before October 21, 1906, of the action of the convention, for on that day the lodge adopted a resolution declaring that it did not accept the decision rendered by the tenth biennial convention relative to the controversy existing between the lodge and the grand lodge in regard to payment of grand dues January 1, 1905, and instructed a committee to appeal to the courts. It thus appears from the bill that the lodge had forty days' actual notice that the convention had approved the interpretation of the amendment to the constitution put upon it by the grand master and had directed him to enforce it. The resolution adopted by the lodge amounts to an express admission that the lodge had full knowledge and notice on October 21, 1906, of the proceedings of the convention, including the direction of the officers of the grand lodge to enforce the constitution as amended and its interpretation of the amendment. The resolution also shows that the lodge defiantly, and in advance of any action of the grand master, proclaimed that it would not accept the decision of the convention on the matter in controversy and live up to and perform the spirit of the agreement on its part. This action by the lodge was a waiver of the right of the lodge, if it had any such right, to require a formal written

notice, and in equity the lodge, or appellants as members · of it, cannot complain of the absence of such notice. The bill, therefore, presents no just or equitable cause, or ground of relief, based on a violation of the agreement by the Brotherhood.

We think, however, the agreement in question did not bind the parties to it. The agreement expresses an attempt made in the interests. of harmony to settle the controversy, and avoid litigation. This was commendable, but it was not effectual in law or fact. The bill shows no authority in the grand master to make such an agreement on behalf of the grand lodge. The qualified approval of his action in this regard by the convention did not give life or force to the agreement. It was not in the power of the grand master and the convention to suspend or abrogate temporarily the constitution under which they were acting, in the manner and by the means shown by the bill.

The provision of the constitution of the order above referred to, providing that a member failing to pay his assessments shall stand expelled *ipso facto* and without notice or trial, is not unreasonable. The People v. Board of Trade, 224 Ill. 370. But whether reasonable or unreasonable, appellants agreed to be bound by it, and indeed make no complaint on that ground. Where the constitution and laws of a voluntary association in regard to expelling a member are not unreasonable or contrary to public policy, equity will not interfere by injunction to prevent such expulsion. Board of Trade v. Riordan, 94 Ill. App. 298, and cases there cited.

At the time when appellants filed this bill, they stood, as we have seen, expelled from the order, and no action of any lodge or officer was necessary to give effect to such expulsion. The publication of the names of appellants in the official organ of the Brotherhood, which is sought to be enjoined by the bill, would have no other effect than to give notice of a fact. It could not affect the standing or memberships of appellants. It

seems clear, then, that in the last analysis the real object of the bill is to restore appellants to membership. In this view of the bill the court did not have jurisdiction. A court of equity will not do this, even if they were unlawfully expelled. An injunction is a preventive remedy merely, and cannot be so framed as to command a party to undo what he has done. Fisher v. Board of Trade of Chicago, 80 Ill. 85; Baxter v. Board of Trade of Chicago, 83 Ill. 146; Pitcher v. Board of Trade of Chicago, 121 Ill. 412.

In our opinion, the chancellor did not err in dismissing the bill for want of equity, and the decree must be affirmed.

*Affirmed.*